UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
JOHN WALSH,                         )
            Plaintiff               )
                                    )
v.                                  )   Civil Action No. 04-CV-11240-RCL
                                    )
BOSTON UNIVERSITY                   )
            Defendant.              )
_____)

# PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Defendant's, Boston University's ("BU"), Motion to Dismiss must be denied in full. First, with respect to Count I, Walsh's complaint adequately alleges a willful violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, which if proven would extend the statute of limitations for the claim from two years to three years. Second, with respect to Counts II, III, and V, it is undisputed that Walsh's federal and state discrimination and retaliation claims are all timely. BU's motion with respect to these counts is simply a request that the Court limit the damages potentially recoverable under these claims. This request is premature and not properly the subject of a motion brought under Rule 12(b)(6). Finally, with respect to Count IV, contrary to BU's assertion, Walsh may bring a claim for relief pursuant to Chapter 93 § 103 in addition to Chapter 151B based upon the same underlying facts.

**FACTS**

Walsh will not reiterate the facts of his complaint here. He fully incorporates all the factual allegations pled in his Complaint here and refers the Court to his Complaint for a proper recitation of the facts of this case.

**ARGUMENT**

In deciding a motion to dismiss, the court is to assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 36 (1st Cir. 2001) (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir.1998)). The district court must construe the complaint liberally. Viqueira v. First Bank, 140 F.3d 12, *16 (1st Cir. 1998). Only if the complaint, so viewed, presents no set of facts justifying recovery that it may be dismissed. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).[1]

**A.   The Complaint Sufficiently Alleges a Willful Violation of the FMLA (Count I)**

Plaintiff's claim under Count I is timely because the statute of limitations for an FMLA violation is three years if the plaintiff can prove a willful violation of the statute. BU has argued that the complaint does not sufficiently allege a willful violation and that this count is untimely and must therefore be dismissed. This argument is without any merit. Clearly, the complaint alleges sufficient facts which, if proven, could establish a willful violation of the FMLA.

---

[1] BU has attached Walsh's two MCAD Charges as well as the MCAD's findings on the first Charge. BU's inclusion of these documents appears inappropriate for a motion to dismiss under Rule 12(b)(6). In any event, BU's suggestion that the MCAD dismissed as untimely the same claims asserted in Walsh's Complaint is incorrect. The MCAD's findings on timeliness only pertain to an age discrimination claim that Plaintiff is not pursuing in this case, not any of the claims raised here.

Plaintiff alleges that BU willfully violated the FMLA by his supervisor's refusal to allow him time to care for his chronic health conditions, by the university's failure to approve his formal request for intermittent leave for doctors' appointments, and then for his *termination* for having made these requests and in violation of his right to this leave under the FMLA.  Indeed, BU even admits that "excessive absences" was a reason for Plaintiff's termination, in spite of the fact that he had filed a formal FMLA request to take these protected absences.

Clearly, if Plaintiff proves these allegations, such proof could constitute a willful violation of the statute.  To prove willfulness, Plaintiff must show that BU knew its actions violated the FMLA or recklessly disregarded the FMLA when it took action against him.  Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003).  Walsh has met his burden of pleading by alleging that he presented doctor's notes to BU when he required leave; that these notes met the FMLA requirements; that his supervisor knew about his health problems, harassed him about them, and refused him leave or the use of his sick time; that he requested intermittent leave under the FMLA from BU which was never granted; and that BU terminated him because of excessive absences, all of which were due to his chronic health conditions.  See Complaint, ¶¶ 10, 15, 20-23, and 27.

The Defendant seeks to hold Walsh to a higher pleading standard than notice pleading for his FMLA claim.  However, in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), the United States Supreme Court rejected any

requirement of a higher pleading standard for discrimination cases because it conflicts with Rule 8's requirement of notice pleading.

> [I]mposing the ...heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Swierkiewicz, 534 U.S. 506, 512-513 (quoting Conley v. Gibson, 355 U.S. 41 (1957)).[2]  The Federal Rules allow for liberal pleading so that the focus is on the merits of the claim, and leave it to discovery to define disputed facts. Swierkiewicz, 534 U.S. 506, 513-514.  Rule 8(a)'s pleading standard is without regard to whether a claim will succeed on the merits, even if it seems that recovery is very remote or unlikely. Swierkiewicz, 534 U.S. 506, 515.  Rule 8 does not require a plaintiff to set out detailed facts because of the liberal opportunity for discovery and other pre-trial procedures.  Rather, the purpose of pleading is to facilitate a proper decision on the merits. Conley v. Gibson, 355 U.S. 41, 47-48, (1957).

The First Circuit went one step further in Educadores Puertorriquenos en Accion et al v. Hernandez, 367 F.3d 61 (2004) and made Rule 8's notice pleading rule applicable to all civil rights actions. Educadores, 367 F.3d 67. Educadores explicitly overruled Judge v. City of Lowell, 160 F.3d 67 (1st Cir.

---

[2] Swierkiewicz also makes the Defendants' reference to Walsh's ability to state a prima facie case in his complaint completely beside the point.  This is the exact issue the Supreme Court considered, and rejected, in Swierkiewicz.  There, the Second Circuit had a rule that discrimination plaintiffs had to plead a prima facie case of discrimination to survive a Rule 12 (b)(6) motion.  Swierkiewicz, 534 U.S. 510.  The Supreme Court completely rejected any such rule.  Thus, Walsh does not have to state a prima facie case in his complaint.

4

1998), a case the Defendants cite in their brief, and all those cases upon which Judge relied.  To the extent the Defendant implies that the holding in Judge is still valid, Walsh points out to the Court that it is not.  From Educadores forward, complaints must set forth "minimal" facts as to the who, what, where, when and why, and when why concerns an actor's state of mind, it can be averred generally.  Educadores, 367 F.3d 68.

    Viewed through this standard, Walsh's allegations of willfulness meet Rule 8's requirements.  In his complaint, Walsh has detailed who he thinks took action against him, what he contends was done to him, where it was done, when it was done, and why it was done sufficient to meet Rule 8's standards as set forth in Educadores.  Walsh presented BU with doctor's notes, so BU knew that he was taking time off to attend to medical issues.  Battaglino harassed him about his medical problems and then denied him leave to attend to them.  After Battaglino refused to allow him intermittent leave, he made a formal request, going above Battaglino.  His request was never granted.  Although Walsh supplied BU with doctors' notes to explain that he required these leaves to care for his chronic health conditions, BU admittedly terminated him at least in part for excessive absences.  See Complaint, ¶¶ 10, 13-15, 18-21, and 22-27.  Taking all these allegations as true, Walsh has alleged that BU knew that he required intermittent leave to care for chronic health conditions, that his supervisor refused him the leave to which he was entitled, and that BU terminated him for taking protected leaves.  As willfulness is a state of mind, Walsh may allege it generally. Educadores, 367 F.3d 68.  Given the rest of his allegations, his general

5

allegation in Count I of his Complaint which incorporates all of the preceding allegations on the part of BU, is consistent with the requirements of Rule 8, Swierkiewicz, and Educadores.

BU's interpretation of Hillstrom would completely contradict the Supreme Court's ruling in Swierkiewicz as well as the First Circuit's recent holding in Educadores. BU cannot rely upon the First Circuit's decision in Hillstrom to enforce a higher pleading standard upon Walsh. Rather, the Court must read Hillstrom's requirements that Walsh must allege that BU knew or should have known that its behavior violated the FMLA in conjunction with Swierkiewicz and Educadores which allow Walsh to allege willfulness generally. Read in this way, Walsh's allegations, when all taken as true, all lead to a conclusion that BU acted willfully. See Complaint, ¶¶ 13-15, 18-21, and 22-27. Therefore, Walsh can take advantage of the three year statute of limitations.

In any event, Hillstrom is of dubious applicability here because it was decided on summary judgment, not a motion to dismiss pursuant to Rule 12 (b)(6). The distinction in Hillstrom's case posture is critical. At summary judgment, the Court determines, from a developed record, whether or not a plaintiff can show any facts establishing willfulness. Even the quote on page 7 of BU's brief states that the Court was deciding what the plaintiff had to do "in order to *establish* a willful violation of the FMLA" [emphasis added]. Hillstrom, 354 F.3d 33. The inquiry for a motion pursuant to Rule 12 (b) (6) is entirely different. Here, the Court takes all allegations as true and determines whether or not the complaint states any theory of law under which Walsh can recover. Given the

requirements of Swierkiewicz and Educadores, Walsh has satisfied the requirements of notice pleading for willfulness. Taking those facts he has pleaded as true, he has made a claim for BU's willful violation of the FMLA. Therefore, the three year statute of limitations may apply, and Walsh can proceed with his FMLA claim. Whether or not it actually applies is a fact issue for the jury to decide. See Edwards v. Ford Motor Co., 179 F.Supp.2d 714, 719 (W.D.Ky. 2001) (general averment as to willfulness sufficient to trigger the three-year statute of limitations for motion to dismiss; where discovery show evidence of willfulness, jury determines willful FMLA violation.).

**B.     It is Undisputed that the Discrimination and Retaliation Claims are Timely, and Defendant's Request that the Amount of Recoverable Damages on These Claims Be Limited Is Premature (Counts II, III, and V)**

Importantly, BU is not seeking to dismiss Walsh's federal or state discrimination and retaliation claims (Counts II, III, and V) but instead is only requesting that the Court limit the scope of the recoverable damages on these claims. As BU acknowledges (and as described below), Walsh's claims brought under Mass. Gen. L. c. 151B ("Chapter 151B") and the Americans With Disabilities Act ("ADA"), 29 U.S.C. § 12101 et seq., have been timely filed both with the administrative agency, the Massachusetts Commission Against Discrimination ("MCAD"), and in court. BU acknowledges that Walsh's claims have been timely filed with respect to his termination but argues that his damages on these claims must be limited with respect to his injury (which may include emotional distress and any lost pay) from alleged conduct that preceded his termination that falls outside the scope of the limitations period.

Plaintiff disagrees with BU's contention regarding how much the potential damages could be limited (as discussed below), but in any event, this argument is inappropriate at this juncture. The purpose of Rule 12(b)(6) is to dismiss claims outright if warranted—it is not the proper procedure for limiting potential damages on properly pled and timely filed claims. BU asks the Court to limit Plaintiff's damages prematurely and without the benefit of any discovery. It cites no authority for such a procedure.

At the time of the events underlying Plaintiff's complaint, the deadline for filing Chapter 151B claims with the MCAD was six months from the accrual of the claim. The deadline for filing the ADA claims with the agency is 300 days. The deadline for filing Chapter 151B claims in court is three years from the accrual of the claim. Plaintiff met all of these deadlines. (There is no such three year deadline for filing the ADA claims in court, so long as they are filed within 90 days of a dismissal by the EEOC.)

In his Complaint, Plaintiff alleges that he was subjected to ongoing discrimination on the basis of his disabilities (in that his supervisor harassed him regarding his disabilities and he was continually refused permission to take time off from work for doctors' appointments) and ongoing retaliation (for refusing to fire a disabled employee, for filing an MCAD complaint in December 2000, for requesting reasonable accommodations in the form of time off from work for doctors' appointments, and for complaining about treatment he reasonably believed was discriminatory). Plaintiff alleges that both the discrimination and retaliation culminated in his termination in November 2001.

BU does not dispute that Plaintiff's MCAD complaint filed in May 2002 was within six months (Chapter 151B) and 300 days (ADA) of his termination (and that his court complaint filed in May 2004 was within three years of his termination). It argues essentially that his damages for the alleged ongoing discrimination and retaliation must be limited, with respect to the Chapter 151B claims, to the period within six months before the May 2002 MCAD charge and within three years of the May 2004 court complaint. With respect to the ADA claims, it argues that the damages must be limited to the period within 300 days before the May 2002 MCAD charge.

These arguments are incorrect. With respect to the Chapter 151B discrimination claim, Plaintiff can recover damages for ongoing discrimination he alleges to have suffered prior to the six months before the filing of his May 2002 charge if he can prove that this discrimination was a continuing violation[3] and, under state law, that he reasonably could have believed that all hope was not yet lost at the time of the earlier discrimination. See Ocean Spray Cranberries, Inc.

---

[3] Plaintiff's complaint states a claim for a discriminatory and retaliatory hostile work environment, both of which are subject to the continuing violation doctrine under Massachusetts law. See Ocean Spray; Cuddyer v. Stop & Shop Supermarket Company, 434 Mass. 521 (2001). Although BU denies that the continuing violation doctrine may apply to Plaintiff's complaint, BU's characterization of Walsh's claim as a "series of discrete acts" ignores paragraphs 15 through 18 of Walsh's Complaint which describe retaliatory harassment by his supervisor, Battaglino. Plaintiff alleges that Battaglino's actions created a hostile work environment and exacerbated Walsh's health problems.
An employer can be liable for subjecting an employee to a hostile environment in retaliation for his protected activity. See Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 26 (1st Cir. 2002) ("Just as an employer will be liable for discrimination if it tolerates a racially or sexually hostile work environment, it will be liable for retaliation if it tolerates severe or pervasive harassment motivated by the plaintiff's protected conduct"); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir.1998) ("retaliation can take the form of a hostile work environment"); Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir.1998) ("co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim").

v. Massachusetts Commission Against Discrimination, 441 Mass. 632 (2004).[4] With respect to his ADA discrimination claim, his damages are simply not limited to the 300 days prior to the filing of the MCAD charge, even if he should have been expected to sue before the statute ran out. Federal law under National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), does not limit the damages as state law may under Ocean Spray. See National Railroad, 536 U.S. at 119 ("the statute in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge. . . . the timeliness requirement does not dictate the amount of recoverable damages").

With respect to the state and federal retaliation claims, Plaintiff is clearly not limited to damages within the six months/300 days prior to the filing of his May 2002 MCAD charge because his retaliation claim was included in his earlier MCAD charge (filed in December 2000). Thus, retaliation that he suffered *after* the filing of that charge was encompassed within the scope of that charge and thus was sufficiently administratively exhausted with the MCAD.[5] Clockdile v.

---

[4]  BU argues that Walsh has alleged that he was denied reasonable accommodation in May 2001 when he formally requested a reasonable accommodation from BU. Obviously, however, Walsh's request was denied at some point *after* he requested them in May 2001, but he may not know precisely when. Only BU knows exactly when the request was rejected. When an employer does not respond to a request for reasonable accommodation for a period of time, the employee is not expected to come forward with a discrimination claim until he is able to appreciate that his request will not be granted. Ocean Spray, 441 Mass. at 632. Because he had appealed at that point to a higher authority at BU, above his supervisor Battaglino, Walsh could not know for certain that his request would never be granted until his termination. As far as Walsh knows, his termination was BU's response to his request for reasonable accommodation. Thus, he may not have reasonably believed there was no hope of resolving his situation until he was terminated.

[5]  The MCAD complaint remained pending until September 18, 2003.

New Hampshire Dept. of Corrections, 245 F.3d 1, 4 (1st Cir.2001). Under Clockdile, there was no need for him to refile new retaliation claims.[6]

Arguably, Plaintiff's damages on his Chapter 151B retaliation claim may be limited to the three year period preceding the May 2004 filing of his court complaint, if he does not meet the continuing violation standard discussed in Ocean Spray (by virtue of his having already filed a retaliation complaint in December 2000 and thus recognizing at that time a potentially cognizable claim for retaliation). Even if they are, the damages on his ADA claim could not be so limited, since National Railroad differs from Ocean Spray on this point and since there is no three year deadline for filing an ADA claim in court. Also, even if his damages on his Chapter 151B retaliation claim were limited to this period, the limitation could not apply to his Chapter 151B discrimination claim since the December 2000 complaint did not include a claim of disability discrimination.

Walsh's case presents a classic scenario of ongoing disability discrimination and retaliatory harassment creating a hostile work environment. He alleges that his supervisor, Battaglino, began a campaign of retaliatory harassment because he opposed the termination of a handicapped employee. Battaglino's retaliatory harassment focused on his disabilities and need for reasonable accommodation, and Battaglino continued to harass Walsh right up

---

[6] In addition, Plaintiff's second MCAD complaint, which he filed *pro se* in May 2002 (and should therefore be broadly construed, see Lattimore v. Polaroid Corp., 99 F.3d 456 (1st Cir. 1996)) includes a complaint of retaliation, and thus can be recognized as alleging (or at least including within the charge's scope) retaliation for Plaintiff's having filed the first MCAD complaint.

11

to the time of Walsh's termination. Walsh sought reasonable accommodations and intermittent FMLA leave from BU. See Complaint, ¶¶ 19 and 20. BU could have granted either of his requests which would have resolved the problem. Instead, Walsh was terminated on November 30, 2001. Thus, Walsh may be able to prove that he did not consider his situation as hopeless until the time of his termination. The Court should not limit Walsh's damages before Walsh has had the opportunity to obtain discovery from the Defendant. At this early stage, without discovery, the Court should not limit Walsh's potential damages because BU, as the employer, holds all the information.

**C.   Walsh May Bring A Claim for Violation of the Massachusetts Equal Rights Act (Chapter 93 § 103) in Addition to His Chapter 151B Claims**

In Count IV of his Complaint, Plaintiff alleges that Defendant's conduct violates the Massachusetts Equal Rights Acts ("MERA"), Mass. Gen. L. ch. 93 § 103. In its motion, Defendant argues that Plaintiff cannot pursue his claims under ch. 93 because, in employment disputes, that statute is preempted by ch. 151B. This argument is incorrect. A number of courts have recognized that in cases in which the plaintiff has exhausted his administrative remedies, and thus is not attempting to evade the procedural prerequisites to suit under Chapter 151B, claims brought under Chapter 93 are not preempted by Chapter 151B. See Jancey v. School Committee of Everett, 421 Mass. 482, 495-499 (1995); Charland v. Muzi Motors, Inc., 417 Mass. 580, 582 (1994); Ross v. Raytheon Co., 2001 Mass. Super. Lexis 481, 10-11; O'Brien v. Avis Rent A Car, 1997 WL 260515 (Mass. Super. Ct. 1997); McDonnell v. Certified Engineering, 899 F.Supp. 739, 752 (D. Mass. 1996); Rowe v. Town Of North Reading, 2001 WL

170655, *8 (Mass.Super. 2001); MacDonald v. Gillette Co., 1997 WL 1189357, *3 (Mass.Super. 1997); Donovan v. Bell Atlantic Co., Norfolk Superior Court C.A. #98-1388-B (Mass.Super. 2000).[7]

Defendant's motion with respect to Plaintiffs' claim under Mass. Gen. L. c. 93 must therefore be denied for the same reasons as the motion must be denied with respect to the claims brought under Chapter 151B.

## CONCLUSION

For the reasons discussed above, Defendant's Motion should be denied.

Respectfully submitted,

JOHN WALSH,
By his attorneys,

/s/ Rebecca G. Pontikes
Shannon Liss-Riordan, BBO #640716
Rebecca G. Pontikes BBO# 637157
Pyle, Rome, Lichten, Ehrenberg
  & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

September 10, 2004

## CERTIFICATE OF SERVICE

This is to certify that on September 10, 2004, a copy of the above document was served via facsimile and first class mail, upon Lawrence S. Elswit, Esq., Boston University, Office of the General Counsel, 125 Bay State Road, Boston, MA 02215.

/s/ Rebecca G. Pontikes
Rebecca G. Pontikes

---

[7] Defendant cites Cargill v. Harvard Univ., 60 Mass.App.Ct. at 604, in support of its contention that Chapter 151B preempts a MERA claim. This recent statement by the Appeals Court conflicts with, and thus appears to ignore, the SJC's consideration of this issue. At least one court has already noted this contrast. See Mammone v. President and Fellows of Harvard College, Middlesex Sup. Ct. No. 03-1402 (Aug. 26, 2004) (Gants, J.) (declining to resolve this conflict between the SJC and Appeals Court).

13