UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WALSH,<br><br>  Plaintiff,<br><br>        vs.<br><br>TRUSTEES OF BOSTON UNIVERSITY,<br><br>  Defendant. | CIVIL ACTION NO. 04-11240-RCL |

DEFENDANT TRUSTEES OF BOSTON UNIVERSITY'S
MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COUNTS I AND IV OF THE COMPLAINT
AND TO LIMIT THE SCOPE OF COUNTS II, III, AND V

INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Trustees of Boston University (the "University") submits this memorandum in support of its motion to dismiss.

The claims in this case evolve from Plaintiff's employment, and the termination of his employment, at Boston University. Even assuming the accuracy of the allegations contained in the complaint, as Fed. R. Civ. P. 12(b)(6) requires, it is fatally deficient in several respects. The University seeks dismissal of Counts I and IV in their entirety, and Counts II, III and V insofar as they assert claims that are barred by the statute of limitations.

Count I, alleging a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., is barred by the two-year statute of limitations. Although Plaintiff would argue that the FMLA's three-year statute of limitations for "willful" violations applies, the mere

insertion of that word into Count I does not change the jurisdictional requirement, and the allegations of the complaint do not support a finding of willfulness.

Counts II and III assert violations of the Massachusetts Fair Employment Practices Act, G.L. c. 151B. Chapter 151B has two relevant statutes of limitations, requiring that complaints be filed with both the Massachusetts Commission Against Discrimination ("MCAD") and in court in a timely fashion. Most of the claims asserted in this complaint are barred because they were not filed in time to meet either one or both of those jurisdictional prerequisites.

Count IV, asserting claims under the Massachusetts Equal Rights Act, G.L. c. 93, § 103, must be dismissed because Chapter 151B is the exclusive state law remedy for employment discrimination claims.

Finally, Count V, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 1201 et seq., is also subject to two limitations periods, requiring the filing of administrative and judicial complaints in a timely fashion. The ADA claims, like the claims asserted under Chapter 151B, must be severely restricted because Plaintiff has failed to comply with the jurisdictional prerequisites contained in that statute.

PROCEDURAL HISTORY

On May 18, 2004, Plaintiff filed his complaint in Middlesex Superior Court. The University was served with a summons on May 28. The complaint asserts federal statutory claims, and on June 7, 2004, the University filed a Notice of Removal. Pursuant to U.S. District Court Local Rule 81.1, the University filed certified copies of the state court records and docket entries on July 20, 2004.[1]

---

[1] Earlier, on June 10, 2004, the University filed an Assented-to Motion for Enlargement of time to respond to the complaint up to and including July 30, 2004.

## ALLEGATIONS IN THE COMPLAINT

Without conceding the veracity of any of the allegations contained in the complaint, but assuming them to be true for the purposes of this motion only, the allegations follow.

Plaintiff, who suffers from several serious and chronic health conditions, was employed by the University for more than six years in the Department of Residential Safety. He was "a qualified disabled individual who was capable of performing the essential functions of his job with or without reasonable accommodation." (emphasis added). Plaintiff's supervisor harassed him about his health, and his need for intermittent leave. His supervisor was "unhappy with [Plaintiff]" because of his disabilities, because he required intermittent leave, because he refused to terminate a handicapped employee and because he filed a retaliation complaint with the Massachusetts Commission Against Discrimination (MCAD). Ultimately, Plaintiff was terminated. The University admitted that the termination was based, in part, on his absences. ¶ 1.

Plaintiff "attended doctors' appointments whenever possible during his lunch break or before or after work." ¶ 7. Sometimes he required time off from his work day to visit his healthcare providers. ¶ 8. He supported his requests for medical leave with doctors' notes. ¶ 10.

Before June 2000, when John Battaglino, Jr., became his supervisor, Plaintiff had an excellent performance record. ¶¶ 11, 12.

In September 2000, Battaglino directed Plaintiff to terminate an employee who suffered from attention deficit disorder. Plaintiff refused to terminate the employee because he believed such action would constitute unlawful disability discrimination. ¶ 13. As a result, Battaglino began "a campaign of retaliation" against Plaintiff. Battaglino made inappropriate inquiries about Plaintiff's health; he refused to approve Plaintiff's requests for medical leave; he criticized Plaintiff's job performance and disciplined him. ¶ 15.

Plaintiff filed a complaint with the MCAD in December 2000, alleging that Battaglino had engaged in retaliation because he (Plaintiff) refused to terminate a disabled employee. Thereafter, retaliation increased and ultimately culminated in his termination. Battaglino's harassment "exacerbated [Plaintiff's] mental and physical health conditions." ¶¶ 16-18.

Plaintiff requested a reasonable accommodation in May 2001, but the University never granted his request. ¶ 19. In August 2001, he requested intermittent leave under the Family and Medical Leave Act. This leave was never approved. ¶ 20. Although Plaintiff was accused of assaulting his supervisor, it was the supervisor who assaulted him. ¶ 25. Plaintiff was accused of insubordination when he complained of actions taken by the University that he believed to be unlawful. ¶ 26.

Plaintiff was terminated because of his disabilities, his requests for and need for time off to attend to his health, and in retaliation for his complaints about what he believed to be discrimination. ¶ 27.

Plaintiff filed discrimination claims at the MCAD prior to filing this complaint. ¶ 28.

STANDARD OF REVIEW

"Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." Iacampo v.

Hasbro, Inc., 929 F. Supp. 562, 567 (D.R.I. 1996). "Dismissal or judgment on the pleadings is inappropriate unless 'it appears beyond a doubt that the [plaintiffs] can prove no set of facts in support of [their] claim[s] which would entitle [the plaintiffs] to relief.'" Estate of Castucci ex rel. Castucci v. U.S., 311 F. Supp. 2d 184, 186, (D. Mass. 2004) (Lindsay, J.) (quoting U.S. v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999)). "For the purpose of [a motion to dismiss], [the court] must treat all well-pleaded facts, and all reasonable inferences therefrom, as true." Id. However, "notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 67 (1st Cir. 2004) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). "[I]n considering motions to dismiss [the court] should continue to 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'" Id. at 68 (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).

The complaint's barebones allegations, with vague claims of rights denied and suggestions of timely compliance with the administrative prerequisites to litigation, do not constitute "well-pleaded facts" or support "reasonable inferences therefrom." Thus a closer look at Plaintiff's allegations that he "filed his discrimination claims at the Massachusetts Commission Against Discrimination . . ." (Complaint, ¶ 28) is appropriate. In fact, he filed two complaints at the MCAD. The timing and content of those complaints is critical to determining whether Plaintiff has properly secured the jurisdiction of this Court.

Plaintiff's MCAD complaints, filed on or about December 28, 2000 (Ex. 1), and May 23, 2002 (Ex. 2), and the Commission's September 18, 2003, decision dismissing the first complaint

(Ex. 3), are appended to this memorandum.[2/] The Commission has not yet rendered its decision on the second complaint.

In the ordinary course, a motion to dismiss is based solely upon the complaint, and if additional documents are incorporated into the Court's decision, the matter is properly converted into one for summary judgment under Rule 56. However, courts have made exceptions for documents central to a plaintiff's claim, or referred to in the complaint, or whose authenticity is uncontested. Castucci, 311 F. Supp. 2d at 188 n.7; Lynch v. Bd. of State Examiners of Electricians, 218 F. Supp. 2d 3, 7 (D. Mass. 2002); Hogan v. Eastern Enterprises/Boston Gas, 165 F. Supp. 2d 55, 58 (D. Mass. 2001); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4, 809 N.E.2d 1017 (2004).

Plaintiff's MCAD complaints, and the Commission's decision, fit into all three of the exceptions. The inclusion of Exhibits 1-3 does not alter the standard of review of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). They help to illuminate the complaint, and reinforce the conclusion that Plaintiff has in large measure failed to state claims upon which relief can be granted.

## ARGUMENT

I.   Count I Must Be Dismissed Because It Is Barred by the Statute of Limitations.

The Family and Medical Leave Act of 1993 (FMLA) was enacted to balance the demands of the workplace with the needs of families to care for children and sick family members. 29 U.S.C. §§ 2601(a), (b). An eligible employee is allowed up to twelve weeks of unpaid leave in a twelve-month period to address, among other needs, a serious health condition that prevents the employee from performing the functions of his or her job. 29 U.S.C. § 2612(a).

---

[2/]   The May 23, 2002, charge is still pending before the Commission.

An employer may not "interfere with, restrain, or deny the exercise of . . . any right" by the employee under the Act. 29 U.S.C. § 2615(a)(1). In addition, an employer cannot discharge or discriminate against an employee who opposes any unlawful acts under the FMLA. 29 U.S.C. § 2615(a)(2). An employer is allowed to require that an employee's request for leave be supported by certification from a healthcare provider. 29 U.S.C. § 2613.

In most circumstances, the FMLA statute of limitations expires two years from the last date of an alleged violation. 29 U.S.C. § 2617(c)(1). However. the statute of limitations extends to three years in the event of a "willful" violation. 29 U.S.C. § 2617(c)(2). Assuming, for purposes of this motion only, that the complaint alleges a prima facie case, see, e.g., Cormier v. Littlefield, 13 F. Supp. 2d 127, 129 (D. Mass. 1998), it fails to allege facts sufficient to trigger the three-year statute of limitations.

The First Circuit has defined a narrow set of circumstances under which a claim would rise to the level of a "willful" violation of the FMLA:

> We hold that in order to establish a willful violation of the FMLA, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). In McLaughlin, the Supreme Court rejected several less precise tests for willfulness, and the First Circuit's analysis in Hillstrom concludes that a limited definition of the term was a necessary feature of a two-tiered statute of limitations. A broader definition of willfulness would effectively dissolve the distinction. Hillstrom, 354 F.3d at 32-34.

The First Circuit's decision in Hillstrom applies the McLaughlin reasoning to the FMLA. Willfulness, and the accompanying three-year statute of limitations, is not a default standard,

- 7 -

but, rather, one that must be specifically asserted in a complaint. Here, the complaint fails to allege facts that suggest that the University acted in "reckless disregard" of the FMLA.

The complaint suggests, with no specific assertion in support of the suggestion, that Plaintiff was terminated "because of his requests for and need to take time off from work to receive treatment for his health conditions. . . ." ¶ 27. Even if this allegation were true (which it is not), it does not rise to the level of "reckless disregard" for rights secured by the FMLA. The complaint fails to even allege that Plaintiff was denied leave under the statute: rather, it merely states that he requested leave that was never approved. Complaint, ¶ 20. The insertion of the word "willful" in Count I does not cure this fatal defect.

The First Circuit does not accept legal conclusions cast in the form of factual allegations. "The rule that we accept plaintiff's well-pleaded factual averments and indulge every reasonable inference hospitable to [his] case 'does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be dominated by unpleaded facts." ' " Judge v. City of Lowell, 160 F.3d 67, 77 (1st Cir. 1998) (quoting Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982)).

The complaint does not support so much as an inference of willfulness as it has been defined by the First Circuit. "It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Plaintiff was terminated on November 30, 2001 (¶ 21), but the Complaint was not filed in the Superior Court of Middlesex County until May 18, 2004 — nearly thirty months following the last possible event that might give rise to a cause of action under the FMLA. Plaintiff's

allegations simply do not trigger the three-year statute of limitations. Count I is time-barred and must be dismissed.

    II.    <u>The Scope of Counts II and III, Asserting Claims under M.G.L. c. 151B, Must Be Narrowed to Assure Compliance with the Statute of Limitations.</u>

Counts II and III assert claims under the Massachusetts Fair Employment Practices Act, G.L. c. 151B. This statute establishes a comprehensive administrative scheme for investigating, and remediating, employment discrimination. Here, G.L. c. 151B, § 4(16) (cited in Count II), prohibits discrimination on the basis of disability, and G.L. c. 151B, § 4(4) (cited in Count III), bars an employer from retaliating against an employee who "has opposed any practices forbidden by this chapter." But the relevant statutes of limitations severely restrict the scope of these claims.

A claim of discrimination is subject to two limitation periods. A person seeking relief under Chapter 151B was, at the time of the events at issue, required to file a claim with the MCAD within six months of the alleged act of discrimination. G.L. c. 151B, § 5.[3] Thereafter, a grievant may file a civil action within three years "after the alleged unlawful practice occurred." G.L. c. 151B, § 9; <u>Swaida v. Gentiva Health Svces.</u>, 238 F. Supp. 2d 325, 331 (D. Mass. 2002);

---

[3] On or about August 7, 2002, the Legislature passed, and Governor Swift signed, an amendment to c. 151B, § 5, that extended the statute of limitations for filing a claim with the MCAD from six months to 300 days. The legislation specifically stated that the amendment "shall apply only to claims arising after the effective date of this act," which was November 5, 2002. Ch. 233, § 4, Acts of 2002.

Weber v. Community Teamwork, Inc., 434 Mass. 761, 784, 752 N.E.2d 700, 717 (2001). Both statutes of limitations are jurisdictional, and operate as an absolute bar to untimely claims. The statutes begin to run when a plaintiff knew or should have known of the factual basis for his claims. Vesprini v. Shaw Industries, Inc., 221 F. Supp. 2d 44, 53 (D. Mass. 2002), aff'd. 315 F.3d 37 (1st Cir. 2002).

The complaint suggests that Plaintiff's difficulties began in or around September, 2000, when he refused to comply with an instruction to terminate an employee with attention deficit disorder. ¶ 13. Setting aside for the moment the many unstated issues surrounding this allegation — including whether the employee was a qualified handicapped individual, whether he had shared his diagnosis with the University, whether he had requested an accommodation, and whether Plaintiff was told to terminate this employee for job-related reasons or for discriminatory reasons — this event precipitates the claims that follow.

Although the complaint carefully declines to articulate when certain events took place, the plain text — and his two MCAD submissions — show that Plaintiff knew he could assert discrimination claims more than three years prior to May 18, 2004, the date he filed this lawsuit.

Plaintiff's first complaint to the MCAD, filed on December, 2000, shows his belief that he had been subjected to a wide array of retaliatory measures: he was threatened with termination; he was denied copies of his personnel files; his mail was opened; he was "tracked through campus"; he was issued warning letters; and he was docked vacation time. He claims he unsuccessfully sought relief within the University. Although this MCAD complaint asserts a

claim for age discrimination, as written, it is clear that Plaintiff believed that his refusal to terminate an employee with a disability is the event that precipitated retaliation.  Ex. 1.[4/]

The Supreme Judicial Court has held that "[b]y the plain language of [Chapter 151B], the limitations period begins to run at the time of 'the act of discrimination.' " Ocean Spray Cranberries, Inc. v. MCAD, 441 Mass. 632, 641, 808 N.E.2d 257 (2004) (quoting G.L. c. 151B, § 5).  However, the First Circuit, recognizing that "[t]he continuing violation concept has provoked endless confusion," has allowed plaintiffs to assert otherwise time-barred claims if, at the time of the alleged offense, the plaintiff had no reason to know that a wrong had been committed.  Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 11 (1st Cir. 2001); see also Provencher v. CVS Pharmacy, 145 F.3d 14-15 (1st Cir. 1998) (same).

A plaintiff's delayed recognition of a claim "is more likely to occur in cases of ongoing harassment where pinpricks may only slowly add up to a wound."  Keeler, 238 F.3d at 12.  But in the ordinary course plaintiffs must assert their rights within the appropriate limitations period.  The First Circuit has held that filing a charge with the MCAD is evidence that a plaintiff is aware of the existence of a claim.  Morris v. Gov't. Dev. Bank of Puerto Rico, 27 F.3d 746, 749 (1st Cir. 1994) (notice of adverse employment action starts running of limitation period); Ching v. Mitre Corp., 921 F.2d 11, 14-15 (1st Cir. 1990).  Here, Plaintiff's December 2000 MCAD charge—described in Paragraph 16 of the complaint before this Court—establishes that by no later than that date he believed he had claims of discrimination and retaliation:

> In or around 9/00, when I refused to terminate the services of a handicapped individual. [sic] I was told to comply, or I would be

---

[4/]   The MCAD dismissed the December 2000 complaint as untimely, concluding that there was no evidence of a continuing violation sufficient to toll or otherwise extend the statute of limitations governing the filing of actions before that agency.  The MCAD also found no causal connection between any protected activity in which Plaintiff claimed to have undertaken and any adverse employment action.  Ex. 3.

>   terminated.  Since that time I have been . . . threatened with termination.

Ex. 1.

Now, more than three years later, this lawsuit reiterates Plaintiff's view that he was subjected to "a campaign of retaliation" (¶ 14) and a range of discriminatory mistreatment because of his refusal to terminate a disabled employee (¶¶ 15, 16).  This, he claims, generated even more retaliation (¶ 17), and eventually led him to make "a formal reasonable accommodation request to BU in May 2001 [that] was never granted."  ¶ 19.  Because the retaliation claims were filed more than three years after Plaintiff learned of them, they are outside the statute of limitations and must be dismissed.

Paragraph 19—notwithstanding its deliberate imprecision—leads to the conclusion that Plaintiff was denied accommodations in or around May 2001—approximately one year before he filed his second MCAD complaint in May 2002.  He cannot assert these claims through Counts II and III, as they are barred by the 180-day statute of limitations then in effect.  G.L. c. 151B, § 5.  Although the allegations in the complaint before this Court blend the various claims of disability discrimination and retaliation, Plaintiff cannot escape the fact that its text, coupled with the MCAD complaints, alleges a series of events which took place outside the limitations period and put him on notice of the existence of a cause of action.[5/]

Nor can Plaintiff claim that he has secured the right to judicial review by virtue of the "continuing violation" doctrine.  In order to make such a claim, he would have to allege (and, later, prove) that an adverse act within the limitations period is substantially related to the events

---

[5/]   The University is not, in this motion, arguing that claims arising from Plaintiff's termination are barred by the statute of limitations.

that fell outside the covered period.  Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 531-32, 750 N.E.2d 928 (2001).

The Supreme Judicial Court has held that the application of the continuing violation doctrine does not toll the statute of limitations unless at least one discriminatory act took place within the appropriate limitations period; that there is a "substantial relationship" between that act and alleged untimely discriminatory acts; and that the alleged untimely acts did not, at the time they occurred, lead a plaintiff to form a reasonable belief that those acts were discriminatory.  Ocean Spray Cranberries, 441 Mass. at 642-43.  In that case, the court considered whether the continuing violation exception applied to a claim by an employee who requested reasonable accommodations for his disability.  Some of those requests fell within, and some were barred by, the statute of limitations for filing a complaint with the MCAD.  The court specifically rejected the Commission's position that a new violation of c. 151B occurred each day the employee was denied an accommodation.  Id.  The court held that the MCAD's "each day" theory "would eviscerate the purpose of a statutory limitations period, and permit what should be a limited exception to such a stricture to swallow it whole.  When an employer denies an employee's request for a reasonable accommodation, each denial is "a discrete discriminatory act triggering the statue of limitations."  441 Mass. at 645.

Plaintiff's second MCAD charge asserts that he was terminated "in retaliation for his internal complaints against a former [University] officer's associates who used racial epithets but were never disciplined."  Ex. 2.  The complaint before this Court does not repeat this charge.[6]

---

[6] Oddly, this assertion—contained in a document Plaintiff attested and signed—is in certain respects inconsistent with the assertions in the complaint in this lawsuit, which, charitably interpreted, suggest that Plaintiff was terminated because he requested medical leave (¶¶ 20, 21); because of excessive absences (¶ 22); because he assaulted a supervisor (¶ 23); and because of his disabilities and in retaliation for his complaints (¶ 27).

Rather, the lawsuit alleges that in May 2001 Plaintiff sought "time off for his treatment" by way of a request for a reasonable accommodation, which was not granted (¶ 19); thereafter he requested intermittent leave under the FMLA in August 2001 (¶ 20). The complaint, read in conjunction with Exs. 2 and 3, makes clear that Plaintiff understood that his rights had been violated on a number of specific and distinct occasions.

"Federal courts should not apply equitable tolling liberally to extend time limitations in discrimination cases. . . . In a nutshell, equitable tolling is reserved for exceptional cases." Davis v. Lucent Technologies, 251 F.3d 227, 234 (1st Cir. 2001) (quoting Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 58-59 (1st Cir. 1998) (interpreting G.L. c. 151B). In Davis, a sexual harassment/wrongful termination case, the First Circuit concluded that "[t]he continuing violation doctrine is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." 251 F.3d at 235 (citations omitted).

There is no such anchor in this case, either as to the limitations period governing filings with the MCAD, or the separate limitation restricting the filing of lawsuits. Unquestionably, Counts II and III are barred by the statute of limitations to the extent that they seek to assert claims that were not brought before the MCAD in a timely fashion, or accrued prior to May 18, 2001 (three years before Plaintiff filed this lawsuit).

    III.    <u>Count IV Must Be Dismissed Because the Massachusetts Equal Rights Act Claims Are Preempted by the Massachusetts Fair Employment Practices Act, G.L. c. 151B.</u>

The Massachusetts Fair Employment Practices Act, G.L. c. 151B, provides the exclusive state law remedy for employment discrimination. Green v. Wyman-Gordon Company, 422

Mass. 551, 554, 664 N.E.2d 808 (1996); Cargill v. Harvard Univ., 60 Mass. App. Ct. 585, 604, 804 N.E.2d 377 (2004).  The Massachusetts Equal Rights Act, G.L. c. 93, § 103, does not create an independent right to vindicate alleged claims that can otherwise be redressed under c. 151B. Green, 422 Mass. at 557-558; Cargill, 60 Mass. App. Ct. at 604.  "[W]here applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections."  Charland v. Muzi Motors, Inc., 417 Mass. 580, 586, 631 N.E.2d 555 (1994).  This is a matter of black letter law in Massachusetts that has been clearly acknowledged by the United States District Court.  See, e.g., Reidy v. Travelers Insurance Co., 928 F. Supp. 98, 106 (D. Mass. 1996) (recognizing Chapter 151B as the exclusive state law remedy for employment discrimination claims); see also DeFazio v. Delta Airlines, Inc., 849 F. Supp. 98, 102-03 (D. Mass. 1994) (citing state and federal cases holding that Chapter 151B prohibits independent actions under other Massachusetts statutes); Bergeson v. Franchi, 783 F. Supp. 713, 721 (D. Mass. 1992) (same).

Plaintiff is restricted to asserting his claims in accordance with the remedial framework of Chapter 151B.  The Massachusetts Equal Rights Act does not support an independent basis for relief.  Accordingly, Count IV must be dismissed..

    IV.    <u>The Scope of Count V Is Restricted by the Statute of Limitations.</u>

Count V asserts a claim of "disability discrimination and retaliation in violation of the Americans with Disabilities Act, 29 [sic] U.S.C. § 1201, et seq."  Claims under the ADA, codified at Title 42 of the United States Code, are treated as personal injury actions, and the pertinent statute of limitations is three years.  G.L. c. 260, § 2A; Sigros v. Walt Disney World

Co., 190 F. Supp. 2d 165, 168 (D. Mass. 2002); Downs v. Mass. Bay Transp. Auth., 13 F. Supp. 2d 130, 136 (D. Mass. 1998).[7]

The analysis of a discrimination claim under federal law is similar to that applied to claims under M.G.L. c. 151B. The First Circuit has held that

> [e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if a plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.

Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).

The discussion of continuing violations in Section II, supra, applies to the ADA as well. The complaint describes discrete, individual events. They are not "serial" violations, involving a number of discriminatory acts arising from the same discriminatory animus. Nor does Plaintiff allege "systemic" violations, in which an employer maintains discriminatory policies. Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir. 2002). Rather, the plain language of the complaint, and particularly when read in conjunction with the MCAD complaints, Exs. 1 and 2, contains a wide range of disparate allegations. And, in any event, Plaintiff's awareness that he had claims—manifested by his MCAD submissions—prevents him from claiming that he did not know how, when, or whether to assert his legal rights.

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), the Supreme Court considered the time standards appropriate for Title VII discrimination and hostile

---

[7] The ADA, like M.G.L. c. 151B, requires aggrieved parties to exhaust their administrative remedies by filing a charge with the EEOC or the appropriate state or local agency before filing suit. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). This charge must be filed within 300 days of the alleged unlawful behavior. Thus the major federal statutes prohibiting discrimination, including Title VII of the Civil Rights Act of 1964, have adopted the same administrative enforcement scheme.

environment claims. The Court held that the standard was more flexible for hostile environment claims, but that for discrete acts, the limitation period was to be strictly applied:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . . Each incident of discrimination and each retaliatory adverse decision constitutes a separate actionable "unlawful employment practice."

536 U.S. at 113, 114. The First Circuit's decision in Crowley v. L.L. Bean, a Title VII case, conforms to this approach. 303 F.3d at 395-96. Since the ADA and Title VII follow the same remedial path, see p. 16 n. 7, supra, it is appropriate to follow the same logic in assessing the propriety of untimely claims under the ADA. In Davidson v. America Online, Inc., the Court of Appeals for the Tenth Circuit applied the Supreme Court's reasoning in Morgan to the ADA. 337 F.3d 1179, 1184 (10th Cir. 2003). Logic strongly suggests that that reasoning be applied in this case, to bar claims that that accrued more than three years from the filing of this lawsuit and more than 300 days before plaintiff filed his MCAD complaints.

The First Circuit has held that a claimant who files a charge of discrimination with the MCAD knows he or she has a claim. Morris, 27 F.3d at 749. Thus the statute of limitations began to run no later than December 28, 2000, for Plaintiff's claims that he was the victim of retaliation. Ex.1.[8/]

If an employee has knowledge of a harmful event, he must "promptly bring suit to recover for those harms. Failure to do so will render any later claim regarding those particular harms time-barred." Thomas v. Eastman Kodak Co., 183 F.3d 38, 50 (1st Cir. 1999). The analytical approach described in Section II, supra, applies to Count V as well. Plaintiff's ADA

claims should be limited to those events that occurred no more than three years from the date he filed his complaint in this lawsuit (and that meet the administrative prerequisites of the ADA in a timely fashion).

## CONCLUSION

The obligation to accept the allegations of a complaint as true for purposes of reviewing a motion to dismiss is not unlimited. The First Circuit has held that "this tolerance does not extend to legal conclusions or to bald assertions." Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) (citations omitted). The Court need not credit "conclusory allegations or draw [] farfetched inferences," Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 n.1 (1st Cir. 1997) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)). Along these lines, "empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts, deserve no deference." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir 1998) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). The complaint in this case alludes to claims under state and federal statutes prohibiting discrimination against individuals with disabilities, but consciously avoids setting forth sufficient facts to support those claims. In particular, the complaint fails to even make an effort to identify with some degree of precision the time and date of the challenged conduct.

This Court can reasonably conclude that Plaintiff has declined to specify the precise contours of his claims because he is rightly concerned that they will be barred by the statute of limitations. Hence, for example, the complaint states that, "Battaglino began a campaign of retaliation against Walsh" (¶ 14), without stating when that campaign began or finished.

---

8/ Paragraph 19's opaque assertion that Plaintiff "made a formal reasonable accommodation request in May 2001 [that] was never granted" does not make clear whether a claim based on the denial of an accommodation is timely under the ADA.

Similarly, the complaint claims that Plaintiff "made a formal reasonable accommodation request to BU in May 2001" (¶ 19), and "made a formal request to BU in August 2001 for intermittent leave under the FMLA" (¶ 20) while pointedly declining to identify the date of those "formal" requests. These vagaries might be acceptable in a <u>pro se</u> complaint, but where, as here, Plaintiff is represented by experienced and capable attorneys, this Court should not tolerate "bald assertions" (<u>Resolution Trust Corp.</u>, 985 F.2d at 48) or "conclusory allegations" (<u>Lyle Richards Int'l, Ltd.</u>, 132 F.3d at 112 n.1).

*    *    *    *    *

For the reasons set forth herein, Defendant Trustees of Boston University respectfully requests that this Court DISMISS Counts I and IV of the complaint, and limit the scope of Counts II, III and V to those claims that were asserted in a timely fashion at the MCAD or before this Court.

Respectfully submitted,

TRUSTEES OF BOSTON UNIVERSITY,
By its attorney,


s/Lawrence S. Elswit
Lawrence S. Elswit
(BBO #153900)
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
Date: July 30, 2004                (617) 353-2326