UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN WALSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 104-CV-11240-RCL |
| ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

JOINT STATEMENT PURSUANT TO LOCAL RULE 16.1(D)

Counsel for the parties to the above-captioned matter conferred on January 25, 2005, and now file this joint statement pursuant to Local Rule 16.1(D) and the Court's Notice of Scheduling Conference.

I.   Walsh's Summary of Position

Walsh worked at BU from 1995 until his termination in November 2001, in the position of Operations Manager in the Department of Residential Safety. During his employment with BU, Walsh received treatment for several serious, chronic health conditions, including post traumatic stress disorder, depression, migraine headaches, shingles, and kidney stones. Notwithstanding these health conditions, Walsh was at all times relevant to this matter a qualified disabled individual capable of performing the essential functions of his position.

To care for his health conditions, Walsh needed to attend doctors' appointments and therapy sessions on an intermittent basis. Throughout his employment at BU, he attended doctors' appointments whenever possible during his lunch break or before or after work. At

times, however, he required time off from his work day to visit his health care providers. Walsh presented doctors' notes to BU to support his requests for leave. These requests fulfilled the requirements of the FMLA. These brief leaves did not create an undue burden on BU, as Walsh could still complete the work he was responsible for, or when necessary at times other employees could easily fill in for him.

In June 2000, John Battaglino, Jr. ("Battaglino") became the Director of Residential Safety and Walsh's supervisor. Before Battaglino became his supervisor, Walsh had an excellent performance record. In September 2000, Battaglino directed Walsh to terminate an employee under his supervision. Walsh refused because he believed the termination would constitute unlawful disability discrimination, as the employee suffered from attention deficit disorder. As a result of Walsh's refusal to terminate this employee, Battaglino began a campaign of retaliation against Walsh.

This retaliation included harassment, mostly focused on Walsh's health problems. The harassment included Battaglino making intrusive, unnecessary, and embarrassing inquiries about Walsh's health; refusing to approve Walsh's requests for leave to attend to his health conditions; refusing to authorize Walsh's requests to use his sick time to attend appointments with his health care providers; unduly criticizing Walsh's performance; and unduly disciplining Walsh. Walsh filed a complaint with the MCAD in December 2000, alleging that Battaglino had engaged in retaliation against him for refusing to terminate the disabled employee. After Walsh filed that complaint, the retaliation he experienced from Battaglino increased, ultimately culminating in Walsh's termination.

The harassment Walsh received from Battaglino exacerbated his mental and physical health conditions, necessitating additional time off from work. Because of the difficulties he

experienced in having his supervisor approve his time off for his treatment, Walsh made a formal reasonable accommodation request to BU in May 2001. This request was never granted. Walsh then made a formal request to BU in August 2001 for intermittent leave under the FMLA. This leave was never approved, despite the fact that Walsh was legally entitled to it. Following these requests, Walsh was suspended and later terminated on November 30, 2001.

One of the grounds given for Walsh's termination was excessive absences. These absences, however, were protected leaves under state and federal law, as they were due to Walsh's health conditions. Walsh had provided BU with documentation to support his need for the absences. The other grounds given for Walsh's termination were pretext. For example, Walsh was accused of assaulting his supervisor, when in fact his supervisor had assaulted him. As another example, Walsh was accused of insubordination, when in fact he had simply complained of actions by BU which were, or which he reasonably believed to be, discriminatory, harassing, or otherwise unlawful.

Walsh alleges that he was terminated for one or a combination of the following reasons: because of his disabilities, because of his requests for and need to take time off from work to receive treatment for his health conditions, and in retaliation for his complaining about what he reasonably believed to be discriminatory actions.

II.     Defendant's Position Statement

Defendant Trustees of Boston University (the "University") denies the allegations in the complaint.

The deterioration of Plaintiff's relationship with the University began on approximately June 9, 2000, when he was informed that Mr. John Battaglino, Jr. had been given a position that

Plaintiff had been seeking. It continued until November 30, 2001, when Plaintiff was terminated from employment after he assaulted Mr. Battaglino. Plaintiff punctuated the eighteen months between those incidents with a barrage of harassing, provocative and insubordinate behaviors and an extraordinary attendance record: between January 1, 2001, and November 30, 2001 (the date of Plaintiff's termination), he failed to report to work on 142 out of 230 possible work days—in other words, he was absent 62% of the time. Yet he never missed a day's pay.

Plaintiff alleges a series of ailments and claims he was denied accommodations. However, Plaintiff (who, as noted, took extraordinary liberties with his schedule but was compensated throughout) never satisfied his obligations under either the Americans with Disabilities Act or the Family and Medical Leave Act to provide the University with information that would allow it to make reasonable decisions about either his need for accommodations or whether his absences were justified. The University's inquiries about Plaintiff's health—which he characterizes as "intrusive, unnecessary and embarrassing inquiries" (Walsh's Summary of Position, § I, supra)—were limited to determining his ability to perform his job, and what accommodations would be necessary to allow him to fulfill his responsibilities.

Many of the allegations in this case have previously been considered by the Massachusetts Commission Against Discrimination ("MCAD"). Plaintiff filed two separate complaints before the MCAD (described in the University's motion to dismiss and appended thereto). Both were dismissed. Notably, on September 17, 2004, the Commission dismissed the second of those complaints, and concluded that the University

> . . . provided this Commission with direct evidence of [its] attempt to engage [Plaintiff] in a dialog and learn of his condition. In contrast, [Plaintiff] appears to have acted to thwart these inquiries . . . in direct contradiction to his responsibility at that time. His contentions that his supervisor harassed and eventually

>assaulted him are similarly unsupported. In fact, the available evidence suggests the opposite occurred. . . .
>
>It is apparent from the evidence submitted by [the University] that [it] terminated [Plaintiff] because of his absence from work without adequate explanation in addition to his insubordinate behavior. . . .

III.    <u>Proposed Pretrial Schedule</u>:

    A.    <u>Discovery</u>

The parties agree that discovery shall be limited in accordance with Local Rule 26.1(C). The parties further agree on the following proposed joint discovery plan:

The parties will complete their Automatic Disclosures by April 15, 2005.

The parties will complete paper discovery by June 15, 2005.

Discovery, including all depositions, will be completed no later than August 31, 2005.

    B.    <u>Motions</u>

The parties propose that any dispositive motions shall be filed no later than October 31, 2005.

    C.    Final pretrial conference and trial date to be scheduled by the Court.

IV.    <u>Trial by Magistrate Judge</u>

The parties do <u>not</u> consent to trial by a Magistrate Judge.

V.    <u>Certifications</u>

The parties' certifications pursuant to Local Rule 16.1(D) (3) are attached to this statement.

VI.   Settlement Discussions

Pursuant to Local Rule 16.1(C), the parties discussed settlement on January 25, 2005, but they were unable to reach agreement.

Respectfully submitted,

| FOR DEFENDANT | FOR PLAINTIFF |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY | JOHN WALSH |

 __/s/ Lawrence S. Elswit_____         __/s/ Rebecca G. Pontikes_____
Lawrence S. Elswit, BBO #153900                         Shannon Liss-Riordan, BBO #640716
Office of the General Counsel                                  Rebecca G. Pontikes, BBO #637157
Boston University                                                       PYLE, ROME, LICHTEN, EHRENBERG, &
125 Bay State Road                                                    LISS-RIORDAN, P.C.
Boston, Massachusetts  02215                                 18 Tremont Street, Suite 500
(617) 353-2326                                                           Boston, Massachusetts  02108
                                                                                   (617) 367-7200


Date:  January 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WALSH,<br><br>    Plaintiff<br><br>v.<br><br>TRUSTEES OF BOSTON UNIVERSITY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 104-CV-11240-RCL<br>)<br>)<br>)<br>)<br>) |

WALSH'S CERTIFICATION PURSUANT TO LOCAL RULE 16.1(D) (3)

I, Rebecca G. Pontikes, hereby certify that I have conferred with my client and with opposing counsel, Lawrence Elswit, about this case with respect to a budget for the conduct of this litigation and the possibility of alternative dispute resolution and in compliance with this Court's Notice of Scheduling Conference and Additional Matters.


                        /s/ Rebecca G. Pontikes
                        Rebecca G. Pontikes

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN WALSH, ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 04-11240-RCL |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
| Defendant. ) | |

## CERTIFICATION PURSUANT TO LOCAL RULE 16.1(D)(3)

Counsel for Defendant Trustees of Boston University (the "University") and an authorized representative of the University hereby certify that they have conferred about this case with respect to a budget for the conduct of this litigation and the possibility of alternative dispute resolution.  Counsel for the University further certifies that he has conferred with counsel for the plaintiff in compliance with this Court's Notice of Scheduling Conference and Additional Matters.

Respectfully submitted,

TRUSTEES OF BOSTON UNIVERSITY,
By its attorney,

   /s/ Lawrence S. Elswit
Lawrence S. Elswit
(BBO #153900)
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
(617) 353-2326

- 8 -

- 9 -

                    TRUSTEES OF BOSTON UNIVERSITY


                    By:__/s/ Marc Robillard_____
                         Marc Robillard


Date:  January 28, 2005