AMERICAN ARBITRATION ASSOCIATION
Employment Arbitration Tribunal

In the Matter of the Arbitration between

DAVID BILBILIAN, Complainant

and

MORTON'S OF CHICAGO/BOSTON, INC.,
Respondent

AAA Case No. 11 160 00217 03

## RULING ON PETITION FOR ATTORNEYS' FEES AND COSTS AND FINAL AWARD

**BACKGROUND**

An arbitration was held in this matter pursuant to Morton's Mandatory Arbitration Policy to decide the issue of whether David Bilbilian was terminated in violation of M.G.L. c.149, §148A. Hearings were held on eight days between October 28, 2003 and January 12, 2005. The parties then submitted extensive briefs and reply briefs by July 5, 2005.

In a forty-four page decision, I found that Bilbilian was terminated in retaliation for protesting a tipping policy which he believed violated c. 149, §152A. Bilbilian was awarded back pay, which was significantly reduced because of a failure to mitigate damages; a minimal amount of compensation for emotional distress; and reasonable attorneys' fees and costs. Shannon Liss-Riordan, Bilbilian's primary counsel, initially submitted on October 27, 2005 a request for fees of $181,985, which she requested be enhanced by a discretionary lodestar multiplier; and costs of $12,776.56. She requested that if Respondent challenged the hours or the billing rate, Respondent should be required to produce its complete billing records for the case.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Elise Bloom and Diane Windholz, who represented Respondent throughout the proceedings, filed an opposition motion on November 28, 2005 in which they sought to reduce any award of fees and costs to a total of no more than $60,000, based on a number of issues:

- **Block Billing** They asserted that many of Complainant counsel's time entries, totaling $41,865 in billing, were accompanied by block descriptions, such as "Work on setting up Bilbilian and Hurley depositions; Office conference SLR with JR [Jennifer Rieker, an associate] re Bilbilian and Hurley arbitrations" or "Prepare for arbitration; Meeting with Tom McCue and Kasey Esposito." Such descriptions, they argued, preclude Respondent and the Arbitrator from determining if the time spent on a specific task was reasonable, since it was impossible to attribute actual times to each task. Respondent proposed that a 35%, or $14,652.75, reduction be imposed on the time covered by block entries.

- **Time Related to Hurley** Liss-Riordan's office represented Robert Hurley in his separate arbitration proceeding with Morton's. Respondent wants the $1875 billed by Rieker for time spent preparing Hurley for his deposition, and attending the deposition, deducted. Discovery for the Bilbilian and Hurley arbitrations was conducted simultaneously and it was agreed Rieker could depose Respondent Managers Bullock and Adorno seriatim, on the same day. A total of $10,465 was billed for time relating to discovery and depositions of Bullock and Adorno, which Respondent argued should be reduced by 50%, or $5232.50. Similarly, Respondent stated the cost of the Hurley deposition transcript ($625.65), and half of the cost of the transcripts of the Bullock and Adorno depositions ($821.93) should be deducted from the claimed costs.

- **Reasonableness of Expended Hours** Respondent cited the applicable law that "non-productive time and hours that are redundant, excessive or unnecessary" should not be included in an award of reasonable fees.

2

David Bilbilian
and
Morton's of Chicago/Boston, Inc

- - **Witnesses Not Called** They argued that time spent preparing Maura Daniel and Tom McCue, a total of $2050, should be deducted because these people were not called as witnesses.

- - **Substitution of Counsel** Around February, 2004, after two days of hearing, Rieker left the firm and Amy Carlin began assisting Liss-Riordan. In the ensuing weeks, Carlin charged 29.3 hours for reviewing arbitration transcripts and preparing for arbitration, a total of $7,325. Respondent argued it should not be responsible for the time spent getting Carlin "up to speed" due to a change in staffing.

- - **Time of Associate at Hearing** Respondent asserted the 42.8 hours charged for Carlin's attendance at five days of hearings, which totaled $10,700, should not be included since Carlin did not examine or cross-examine any witnesses. Court decisions were cited in which judges have held that an attorney who does not actively participate in the presentation of a case cannot be compensated via a fee petition.

- - **Post-Hearing Brief** Billing records show Liss-Riordan charged 25.1 hours on the post-hearing brief, while Carlin charged 130.7 hours, the total charges equaling $41,460. Liss-Riordan charged 7.1 hours, Carlin charged 40.7 hours, and Stephen Young [who took over the briefing duties of Carlin when she left the firm in the spring of 2005] charged 25.47 hours for work on the reply brief, for a claimed fee of $17,750. The total fees for both briefs were just under $60,000. Given what Respondent argued were the straightforward legal issues presented in the case, Respondent asserted that the time spent was grossly excessive, and should therefore be reduced by 50%, or $29,605.

- **Hourly Rates** Complainant sought hourly rates of $350 for Liss-Riordan, $250 for Carlin and Rieker, and $200 for Young. Respondent cited Massachusetts Federal District Court decisions awarding $200 for the lead counsel in discrimination cases and rates between $125 and $150 for

3

David Bilbilian
and
Morton's of Chicago/Boston, Inc

associate counsel. In the cited cases, the respective counsel had far more employment law and trial experience than Liss-Riordan, who graduated law school in 1996 and clerked for two years. No trial experience was set forth for the associates, but merely the law school graduation dates of 1999 for Rieker, 2000 for Carlin and Young. Analyzing the fee requests in light of the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), Respondent argued that Liss-Riordan should be compensated at $200 per hour, Rieker and Carlin at $150, and Young at $125. Respondent asserted the case was not labor or time intensive; it was a simple retaliation case which posed no difficult or novel issues; it did not preclude Liss-Riordan and her firm handling other cases; Liss-Riordan offered no evidence of the customary fees she and her firm charge; there was no evidence as to whether the fees was fixed or contingent; Liss-Riordan recovered less than $20,000 of the claimed $133,500 in lost wages and minimal emotional distress; and there was no evidence of awards rendered in similar cases.

• **Multiplier** Respondent opposed Complainant's request for any enhancement by a lodestar multiplier based on *Fontaine v. Ebtec Corp.*, 415 Mass. 309 (1993), which allowed an upward adjustment in certain circumstances "to compensate for the risk of nonpayment." It argued that the issues in the case were not complex, no novel issues of law were raised, and the case did not have significance to a wider group of people.

The parties undertook extensive efforts to settle the fee and costs issue, including participating in a full day of mediation. When settlement efforts failed, Liss-Riordan submitted a reply to Respondent's opposition on July 6, 2006. In it she reiterated her demand that Respondent produce its billing records to provide direct evidence of what Respondent considered to be a reasonable amount of time to prepare and present the case, and a reasonable billing rate for such work. Liss-Riordan then responded to the specific points raised by Respondent's opposition:

4

David Bilbilian
and
Morton's of Chicago/Boston, Inc

- **Block Billing** Complainant argued that block billing of time expended on multiple tasks the same day is not proscribed, and that the entries provide sufficient detail to determine the reasonableness of the time expended.

- **Time Related to Hurley** Complainant asserted that since Hurley's experience at Morton's was inextricably connected to Bilbilian's and the claim of retaliation, discovery related to Hurley was relevant and necessary to presenting Bilbilian's case. To the extent it is argued that the Respondent would not have taken Hurley's deposition had he not had his own case pending, likely Respondent would have deposed this key witness anyway. At most, half of the time and expenses related to Hurley's deposition should be deducted from the initial demand of fees and costs. Similarly, no more than a 10% deduction is appropriate for the Bullock, Hoffman, and Adorno depositions since they were key witnesses in the Bilbilian matter, and a minimal amount of time was spent questioning them about Hurley.

- **Reasonableness of Expended Hours**

    - **Witnesses Not Called** Complainant argued that it is difficult to assess before investigation which witnesses will ultimately provide useful information, and which will be necessary to call at the hearing. Liss-Riordan asserted that much investigation was not billed, since it was conducted as part of counsel's representation of Morton's employees in a prior case challenging the tipping policy. Regarding McCue, it was Complainant's intent to call him as a witness, but scheduling conflicts which developed with chemotherapy treatments made this impossible. Daniel was not called to testify, but no more than a deduction of one hour of time is warranted. The three hour block billing for that day included what counsel asserted was a brief meeting with Daniel, as well as work on document requests and other discovery issues.

    - **Substitution of Counsel** Complainant stated that most of the 29.3 hours of time expended by Carlin in late February and early March was

David Bilbilian
and
Morton's of Chicago/Boston, Inc

devoted to preparing for a resumption of the hearing, the first two days of which had been in October, 2003. The 6.1 hours devoted to her review of the transcript would have been required by Rieker as well, but in any event only these hours should be deducted from the total.

•• **Time of Associate at Hearing** Complainant noted that Respondent had two attorneys present throughout the hearings, reflecting its judgment that this level of staffing was necessary and appropriate. Complainant argued that Carlin's participation was essential to Liss-Riordan's ability to put on Complainant's case in an efficient and effective manner.

•• **Post-Hearing Brief** Complainant argued that the hearings were long and fact-intense, the briefs were necessarily detailed, and the time expended was appropriate.

• **Hourly Rates** Liss-Riordan maintained that a $350 hourly rate is appropriate given her experience, expertise, rates she has been awarded in the past by judges, fees she had commanded as a class action litigator, and fees awarded to and charged by plaintiff lawyers of a comparable level in Massachusetts. Affidavits from a number of the prominent plaintiff attorneys were introduced in support of her claims. She noted that the cases cited by Respondent were largely issued by Judge Young, who has consistently given fee awards below market rates and the rates awarded by most other judges. Regarding the associates, Liss-Riordan cited awards of between $225 and $250 in discrimination cases in Massachusetts.

• **Multiplier** Complainant sought a lodestar multiplier based on the length and factual complexity of the hearing, the significant liability finding which enabled the parties to achieve settlements in a number of other pending arbitrations, and the specialized expertise of counsel.

6

David Bilbilian
and
Morton's of Chicago/Boston, Inc

> • **Fees and Costs for Post-Decision Activities**
> Complainant requested $8190 for time expended on settlement discussions, mediation, and briefing of the fee issue.
>
> • **Post-Judgment Interest** Complainant seeks an order that post-judgment interest at the rate of 12% per annum should run from the date of the fee award to insure prompt payment.

On July 27, 2006, I issued the following order to the parties:

> I have concluded my initial reading of the parties' submissions regarding the Complainant's request for fees and costs. In such cases, I consider the Respondent Counsel's billing records to be highly relevant, although not necessarily dispositive, regarding the issues of the reasonableness of time spent and billing levels. I noticed that Respondent has not complied with Complainant's request for the billing records. If the Respondent wants to challenge the time spent and amount charged by the Complainant's legal team, it must first provide these records. Such records shall be produced to Ms. Liss-Riordan by August 11. Both parties shall then have until August 25 to submit supplemental memoranda to the AAA, along with a copy of the billing records. If vacation schedules make these deadlines burdensome, the parties may either agree between themselves on different dates, or contact you [AAA Administrator Gómez] and request that I set different dates.

Respondent subsequently declined to produce the billing records, arguing that they are protected by the attorney-client privilege. Complainant responded that such records are not protected and maintained that Respondent had waived its claim that Complainant's time expended and rates claimed are unreasonable.

7

David Bilbilian
and
Morton's of Chicago/Boston, Inc

## OPINION

**Failure to Produce Billing Records.** As I stated in my July 27 ruling, I believe that Respondent's billing records would be highly relevant to its claim that the amount of time Complainant's counsel expended in totality, and on specific tasks, was unreasonable. When one reads some decisions reviewing fee petitions, one is struck by the seemingly arbitrary judgments made by judges regarding the billed time. Without any generally recognized guidelines for how long it should take to investigate a claim, conduct discovery, or write a brief, or criteria related to the specific case, some judges reach random conclusions.

I sought to evaluate Complainant's claimed hours based on some objective evidence. It often takes longer to assemble and present a claim than to defend it, so Respondent's time records would not be the dispositive determinant of whether Complainant's time investment was reasonable. They would have provided a rational comparator, however. If Respondent counsel's time expended for specific common tasks was significantly lower than Complainant counsel's, that would have provided a persuasive basis for finding the fees being sought were excessive in whole or in part. If it turned out that Respondent's time was equivalent to or exceeded Complainant's, Respondent's arguments would have been peremptorily dismissed. The same analysis applies regarding billing rates. If the rates Respondent paid its own lawyers exceeded those being requested by Complainant, Respondent would be hard-pressed to argue that the fees being sought by the prevailing attorneys were unreasonable.

8

David Bilbilian
and
Morton's of Chicago/Boston, Inc

The approach I have adopted is hardly unprecedented in Massachusetts. In *Mulhearn v. Roach*, 20 Mass. App. Ct 322,330 (1985) the Appeals Court had to consider a client's claim that the fee charged by his attorney, who had not kept contemporaneous detailed billing records, was unreasonable. The trial judge had excluded evidence of the billing records of the opposing counsel in the case. The Appeals Court ruled that a direct comparison between the billing practices of the opposing parties was highly relevant, and found it was reversible error to exclude the records. In *Change the Climate v. MBTA*, 2005 WL 3735100, Massachusetts Federal District Court Judge Keeton considered the stipulations regarding the amount of time and rates charged by the defendant's counsel, relying on that information in assessing what defendant actually believed were the prevailing market rate for attorneys handling the type of case at bar, as opposed to the rates the defendant was seeking to impose on the victorious counsel.

Respondent has put forth no caselaw which calls into question the validity of the approach articulated by Massachusetts Appeals Court and a highly respected federal district court judge. Respondent's only assertion is that its billing records are protected by attorney-client privilege. The cases cited by Respondent – *Fidelity & Deposit Co. v. McCullough*, 168 F.R.D. 516 (E.D. Pa. 1966) and *Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 144 F.R.D. 600 (D. Mass. 1992) do not deal with access to parallel records when the party seeking to invoke the privilege is challenging the reasonableness of the other parties' fee petition. It is hard to understand the argument that disclosing the billing rate for Bloom and Windholz would enable Complainant's counsel to discover Respondent's litigation strategies or protected communication. Similarly, Respondent

9

David Bilbilian
and
Morton's of Chicago/Boston, Inc

would not have had to disclose what was covered in client or attorney conferences, or witness interviews, but simply how much time they took.

Given that Complainant has the burden of establishing the reasonableness of its time charges and billing rates, the failure of Respondent to comply with my order does not mean Complainant's fee and cost petition is automatically granted. Complainant must still meet its burden of proof. Where Complainant has put forth prima facie evidence of reasonableness, however, and where I have no independent bases for questioning Complainant's requests, Respondent's arguments about excessive time charges and billing rates will not be credited.

**Block Billing.** There is no requirement that a counsel's billing records take a particular standardized form, other than they should contain sufficient detail that judgments can be made as to whether the tasks were closely related to the case and the time charged was reasonable. Nowhere is it stated that counsel must separately identify every discrete task and attach the precise time spent. To mandate that level of recordkeeping would waste enormous amounts of time, since lawyers would be constantly interrupting their work time to make bookkeeping entries.

While Respondent has identified entries for approximately eighty days which it argues should be discounted by 35%, a careful examination of the entries shows they set forth enough information to judge their reasonableness. Many entries totaled a fraction of an hour, and identify a number of tasks which were clearly related to the prosecution of the case. Typical was the July 2, 2003 notation that Rieker spent .4 of an hour writing a letter to, and speaking with, Windholz regarding depositions. Another example was

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Liss-Riordan's .3 hour charge form April 23, 2004 for a telephone call with Windholz and a telephone call with Bilbilian. These were just two of many billing entries which could have been corroborated had Respondent chosen to turn over its billing records.

Deferring the issues of whether the amount of time spent briefing was excessive in the aggregate, and whether Respondent should be responsible for certain hours performed by Carlin, the total charge for each day's work was facially appropriate. That more than one related task was mentioned for a single day did not make the item unreasonable. Respondent did not challenge time allocations so long as there was a single description, such as Rieker's October 2, 2003 2.0 hour charge for preparation for Adorno's deposition. Respondent did challenge the August 19, 2003 7.0 hour charge of Rieker's simply because she noted that she prepared for *and* attended Bullock's deposition. This is not a persuasive basis for discounting the charge, especially since Respondent knew how long the deposition lasted, and it would have had no trouble calculating how much time Rieker spent in preparation that day. Further, what is most noteworthy about the charges is the fact that where there are entries for conferences between Liss-Riordan and Rieker or Carlin, the time for the conferences was only charged by one of the attorneys. Clearly there was sufficient detail to make judgments about the reasonableness of the billing.

**Time Related to Hurley.** Although he had his own pending arbitration, Hurley was a key witness in Bilbilian's claim. There was no way to understand the entire tipping dispute, Bilbilian's role in challenging the policy, and the actions taken against Bilbilian without fully exploring Hurley's employment experience at Morton's. Further,

11

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Complainant made the reasonable argument that the treatment of other employees who were active in opposing management on the tipping policy lent credibility to Bilbilian's claim of retaliation. Ultimately I elected not to address those claims in the arbitration decision, since Bilbilian's situation was unique and there was sufficient direct evidence of retaliation against him to support a finding on Bilbilian's behalf. Complainant's counsel would have been remiss, however, in not fully investigating the experiences of the other employees and presenting that information at the arbitration. No deduction for time relating to Hurley is therefore appropriate.

**Reasonableness of Expended Hours.** Given the number of potential witnesses and the number of interactions which had to be addressed, it stands to reason that Complainant's counsel might expend time interviewing and preparing witnesses whom she ultimately decided not to call at the arbitration hearings. While it is to some extent unfair to judge the efficacy of such expenditures of time retrospectively, that is what judges routinely do when assessing fee petitions. It was not apparent that Maura Daniel had any information which furthered the case, and she was not called as a witness. While Liss-Riordan asserts that she recalls having spent only one hour with Daniel on October 17, 2003, and that she spent the balance of the three hours billed working on document requests and discovery issues, there is no contemporaneous billing detail which would substantiate this claim. Rieker billed four hours for meetings with Tom McCue and Kasey Esposito, which averages out to two hours with each employee. Using this calculus, a 66.6% reduction of the three hour charge will therefore be imposed to account for time possibly spent with Daniel. No reduction is appropriate for the time

12

David Bilbilian
and
Morton's of Chicago/Boston, Inc

interviewing and preparing McCue. Complainant had every intention of calling him as a witness. He was scheduled to testify but was put off because the testimony of other people ran longer than expected, and attempts to reschedule McCue were ultimately thwarted by his need to get chemotherapy treatments.

Respondent is correct that it should not be accountable for time devoted by Carlin to learn the case. While it is true that lawyers moving between firms is a common phenomenon, the investment of getting the replacement up to speed is a cost which must be borne by that lawyer's firm, not the opposition. It is also true that with a four month break between the second and third hearings, Rieker would have had to review the file to refresh her memory. It is a lot more efficient, however, for someone familiar with a case to get up to speed, than for someone who is reading everything for the first time. Subtracting the time Carlin spent reviewing the transcript, 6.1 hours, is an appropriate measure of time which Respondent should not have to cover. The balance of the time Carlin spent preparing for the arbitration would have been expended by Rieker; as Liss-Riordan rightly argued, even though she had been involved in the early preparation of the case and the first two days of hearings, she too had to devote time getting ready for a resumption of the hearings.

A related issue is whether Complainant could justly charge for the presence of Carlin at the hearings, even though she did not conduct examinations of any witnesses. As noted by Keeton and others, having more than one counsel when presenting an extended case is common practice. It is very difficult to examine witnesses, take notes, handle voluminous exhibits, and get succeeding witnesses ready simultaneously and

13

alone. No doubt this is why Respondent had two attorneys present throughout. While Windholz did ably conduct a few witness examinations, she kept busy even when Bloom was interrogating. Had Respondent's bills been produced, I am certain they would have shown Respondent was charged for all of Windholz's time, not just the time she examined a witness.

The one area where I have some means of comparison apart from Respondent's billing records is for the time charged for reviewing the record and writing the briefs. I had to go through the same record, read the competing briefs, conduct the legal research, decide the case, and write a lengthy opinion. My total charge was 91.2 hours, while the time charged by Liss-Riordan, Carlin, and Young for the briefs and reply briefs was 229.07 hours. My hours are not a wholly accurate comparator, since I trimmed my bill by 10% to account for my own duplicative time necessitated by having to put down the case a number of times to attend to other business. Further, I have been writing decisions for thirty years and pride myself at doing so especially efficiently, a skill which is accounted for in my billing rate. That being said, the hours billed by Complainant for the time Carlin and Young spent on the brief writing is excessive. Some of the extra time was no doubt due to Carlin being distracted by her imminent departure and Young having to learn the case anew. The hours spent by Carlin and Young should therefore be reduced by 50% (Carlin = 85.7; Young = 12.8), bringing the total hours of the three attorneys to 130.6.

**Hourly Rates.** The decisions of Judge Young on attorney fee awards are decidedly out-of-step with numerous other awards by federal and state court judges, and

14

David Bilbilian
and
Morton's of Chicago/Boston, Inc

do not reflect the actual fees charged by major plaintiff counsel, and certainly not by defense counsel. Judge Young's analysis of why prevailing plaintiff counsels are not entitled to anything approaching the billing rates of defense firms is unpersuasive. Judge Keeton's conclusion that the rates paid by the losing party to its own counsel are very probative of what is reasonable is sound.

Liss-Riordan provided more than a sufficient basis to justify her request for a billing rate of $350. She is widely recognized as one of the pre-eminent plaintiff lawyers in New England, and she is the unchallenged leader regarding wage and hour and retaliation claims in the hotel and restaurant industry. Contrary to Respondent's assertions, this was not a simple, straight-forward case and every issue was strongly contested. Even if Respondent counsel's billing records showed that they did not charge $350 an hour, Liss-Riordan's fee rate request would be justified by the supporting affidavits and the nature of the case. The fact that Bilbilian was not awarded a greater portion of his lost wages was due to his failure to adequately mitigate his damages, not any failure in the prosecution of his case.

The rates sought for Rieker, Carlin, and Young are within the range awarded by state and federal judges for associates, and the actual rates charges by firms doing employment law. Had Respondent produced its records so a comparison could have been made with what was being charged for Windholz's time, with an allowance being made for her somewhat more active role, I would have been receptive to looking more critically at the rates being sought for Complainant's associate counsels. Without that information, I see no reason to cut the requested rates.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

**Multiplier.** Complainant's counsel has presented no compelling justification for a lodestar multiplier. There was no significant risk of nonpayment. Complainant would only be entitled to recover legal fees if he prevailed. Once that barrier was met, Complainant was assured fair compensation, since there was no chance Morton's would declare bankruptcy to avoid paying the award.

**Fees and Costs for Post-Decision Activities.** Complainant is entitled to the full $8190 in fees and costs incurred in pursuing the previously incurred fees and costs.

**Post-Judgment Interest.** To ensure prompt payment, post-judgment interest at the rate of 12% per annum shall attach to the monies owing under this award as of thirty days from the issuance of this award.

AMERICAN ARBITRATION ASSOCIATION
Employment Arbitration Tribunal

In the Matter of the Arbitration between

DAVID BILBILIAN, Complainant

and

MORTON'S OF CHICAGO/BOSTON, INC.,
Respondent

AAA Case No. 11 160 00217 03

FINAL AWARD

I, the undersigned arbitrator, award the Complainant the following costs and fees:

> **4/7/03-7/1/05**
> Liss-Riordan  224.2 hours @ $350 = $78,470
> Rieker  117.6 hours @ $250 = $29,400
> Carlin  181.3 hours @ $250 = $45,325
> Young  12.8 hours @ $200 = $2,560
> Costs  = $12,526.56 (AAA filing fee included in final paragraph)
>
> **10/13-7/5/06**
> Liss-Riordan  23.4 hours @ $350 = $8,190
>
> **Total Fees and Costs:** One hundred seventy-six thousand, four hundred and seventy-one dollars and fifty-six cents ($176,471.56)
>
> Interest at the rate of 12% per annum shall attach to this award, starting thirty days from the issuance of this award.

The administrative fees of the American Arbitration Association totaling $3,800.00 and the compensation of the arbitrator totaling $71,675.00 shall be borne by the parties as incurred and in accordance with the Rules.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

This Award is in full settlement of all claims and counterclaims submitted to this

Arbitration. All claims not expressly granted herein are hereby denied.

September 28. 2006                                    Mark L. Irvings

I, Mark L. Irvings, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

September 28, 2006                                    Mark L. Irvings