UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WALSH, )<br>)<br>  Plaintiff, )<br>)<br>       vs. )<br>)<br>TRUSTEES OF BOSTON UNIVERSITY, )<br>)<br>  Defendant. )<br>) | CIVIL ACTION NO. 04-11240-RCL |

MEMORANDUM IN SUPPORT OF
DEFENDANT TRUSTEES OF BOSTON UNIVERSITY'S
MOTION FOR RELIEF FROM JUDGMENT
AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Defendant Trustees of Boston University (the "University") files this memorandum in support of its motion for relief from judgment, and in opposition to Plaintiff's motion for attorneys' fees. The written and oral communications between the parties establish that the University is entitled to relief because of counsel's "mistake, inadvertence . . . or excusable neglect" pursuant to Fed. R. Civ. P. 60(B)(1).

BACKGROUND

Plaintiff's Counsel Knew That Boston University Believed This Case Had No More Than Nuisance Value.

This lawsuit by a former employee alleges that Boston University violated the Americans with Disabilities Act, its Massachusetts companion statute, G.L. c. 151B, and the Family Medical Leave Act. Plaintiff claims that he was denied the protection provided by those laws and was fired because he exercised his statutory rights. The University has vigorously

challenged every allegation of misconduct and has consistently asserted that it acted judiciously at every turn.

Counsel have enjoyed a cordial relationship during the course of this litigation and, at times, discussed the possibility of settlement. The University has consistently asserted that the case has little to no value, that the risk of liability was low, and that Plaintiff had been treated fairly at all times up to and including the termination of his employment. See Ex. A, Affidavit of Lawrence S. Elswit, Esq., and Attachments 1-6, describing these communications in detail.

On January 29, 2007, the Court denied Plaintiff's motion for summary judgment on all counts and scheduled a pre-trial conference for March 29. In early February, counsel discussed the possibility of settlement. Plaintiff's attorney advised that it would take approximately $250,000 to settle the case.

Counsel for the University responded that he and his clients believed that the case had a settlement value of less than ten percent of that figure, that the University had behaved appropriately, and had not exposed itself to any liability during the course of Plaintiff's employment. Counsel for the parties also discussed the possibility of mediation.

On February 15, 2007, counsel for the University informed Plaintiff's counsel that:

> My clients have no interest in a settlement in the neighborhood of $250,000, and unless **you and Mr. Walsh** are willing to consider a settlement along the lines I proposed, I'm not sure there's any benefit to mediation. My clients and I firmly believe this matter was handled properly and patiently, and that the case has nuisance value, no more than that. . . .

E-mail from Lawrence S. Elswit to Rebecca Pontikes, Esq., February 15, 2007 (emphasis added).

Plaintiff's counsel responded on February 16, and continued to encourage mediation. On February 28, the University's attorney replied, and stated, in part:

- 2 -

> The University has decided not to mediate this case unless we receive a commitment that **your client, and your firm, are prepared to settle this case in the low five-figure range**. We strongly believe that this case has no intrinsic value and do not want to be force-fed a Solomonesque settlement. . . . [The University is] prepared to assume the risk of trial if this case cannot be resolved for what, given the facts, is a reasonable figure—i.e., nuisance value.

(Emphasis added.) Thus the University communicated in no uncertain terms the value it put on the case, and that it was prepared to go to trial if the case could not be settled for a very modest sum. Plaintiff's counsel's February 28 acknowledgement made clear that she recognized the University's position (these e-mails are attached to Ex. A, Affidavit of Counsel, as Attachment 4).

Shortly thereafter, on March 6, the University sent Plaintiff's counsel the Offer of Judgment that is the subject of the current proceeding. On March 16, the University received notice that Plaintiff had accepted the Offer.

Beginning on the afternoon of March 16, and on several occasions during the following week, counsel for the University made several phone calls, and sent several e-mails, to counsel for Plaintiff. None of them was returned, suggesting, at least, that Plaintiff was preparing to take advantage of University counsel's mistake and did not want to alert him to that strategy (see Ex. A, Attachments 5, 6).[1] On March 26, counsel for Plaintiff filed her motion for attorneys' fees and costs, without appending a substantive brief, but, rather, advising the Court that she would seek leave to file a brief on the merits after she had the opportunity to review the University's response.

---

[1] See also L.R. 7.1(A)(2) of the Rules of the U.S. District Court (Massachusetts), requiring counsel to confer "in good faith to resolve or narrow the issue." Plaintiff failed to honor this Rule.

ARGUMENT

Plaintiff seeks to recover more than $120,000 in attorneys' fees and costs on the strength of a $15,000 Offer of Judgment. The caselaw in this jurisdiction leads to only one conclusion: this request must be denied.[2] The University is entitled to Relief under Fed. R. Civ. P. 60(b)(1) because counsel's mistake was based upon clearly understood communications with counsel for the plaintiff. Contract principles provide an appropriate methodology for analyzing the problem, and where, as here, there is clear, objective evidence showing that there was no meeting of the minds, the agreement should be rescinded. Furthermore, Plaintiff has accomplished none of the goals of this litigation, and, in the absence of substantive judicial involvement or a court order compelling or authorizing relief, he is not a prevailing party.

I.   The Facts In This Case Compel Relief Under Fed. R. Civ. P. 60(b)(1).

The First Circuit has set forth the criteria for granting what it calls "extraordinary" relief under Fed. R. Civ. P. 60(b)(1). The moving party must demonstrate "that (1) the motion is timely, (2) exceptional circumstances justify granting extraordinary relief, and (3) vacating the judgment will not cause unfair prejudice to the opposing party." Gonzalez Rucci v. U.S. Immigration and Naturalization Service, 405 F.3d 45, 48 (1st Cir. 2005); quoting Caisse v. Dubois, 346 F.3d 213, 215-16 (1st Cir. 2003). In addition, the moving party must give the Court "reason to believe that vacating the judgment will not be an empty exercise"—that is, that the moving party's substantive position in the litigation is "potentially meritorious." U.S. v. Kayser-Roth Corp., 272 F.3d 89, 95 (1st Cir. 2001) (citations omitted).

---

[2] At the very least, the Court should reduce Plaintiff's fees to the bare minimum, for the reasons set forth in this memorandum. Further, under the ADA, the Court "may allow" recovery of fees "in its discretion." 42 U.S.C., § 12205. Under the circumstances, the Court should not award Plaintiff any fees that are subject to its discretion.

The University meets each of these criteria. First, this motion is timely: it was filed "within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(b). The Offer of Judgment was accepted and filed on March 16, 2007; this motion is being filed on April 30.

Second, the exceptional circumstances surrounding the Offer of Judgment, described supra, pp. 2-3, justify granting relief. The University expressed its objective intent that it was prepared to settle this case for a modest sum, in the low five-figure range. The e-mail exchange between counsel establishes that Plaintiff's attorney understood this—the only "meeting of the minds" was the acknowledgement that the case could not settle. The University, acting on its clearly-expressed, and clearly-understood, intent, proffered an Offer of Judgment for the sum of $15,000 to resolve this matter in its entirety. The University should not now be penalized because counsel mistakenly failed to include five words: "including costs and attorneys' fees."

Third, relief under Rule 60(b) will not unfairly prejudice Plaintiff, because he will return to the position he was in prior to the offer, less than two months ago. The University can submit another Offer of Judgment, or the parties can continue to trial.

Finally, the University has demonstrated that its defenses are meritorious and had a reasonable chance of success. The University's position, and the detailed record, are set forth in Defendant's Memorandum in Support of its Motion for Summary Judgment and accompanying exhibits.

Because the plain language of Rule 68 includes costs accrued, the University did not add additional language to that effect. See 1 James Wm. Moore, et al., Moore's Federal Practice, Section 68.4 (2006) ("The rule requires only that the offer be served at least 10 days before the trial begins, and that it include 'costs then accrued.' The offer, however, may be a lump sum,

and need not apportion the offer between the amount for the merits and the amount for costs.")

As the 8th Circuit noted in Radecki v. Amoco Oil Co., 858 F.2d 397 (8th Cir. 1988),

> Rule 68 does not require a laundry list of the elements of relief included within an offer or specific mention of attorneys' fees, and it runs counter to the purpose of Rule 68 to assume that forms of relief not mentioned are not intended to be included within the sum offered. Rule 68 is designed to encourage complete settlement, not simply to resolve the issues of liability and remedies.

858 F.2d at 401. (Emphasis added.)

In Radecki, the Eighth Circuit took note of counsel's settlement communications, and observed, "It thus seems very unlikely that [the offeror] would have been willing to make a binding offer that left it exposed to liability for attorney fees in whatever amount the District Court might fix, especially since [offeror] was aware that [offeree] claimed to have attorney fees of approximately $300,000." Id. Similarly here, the February 2007 e-mail exchanges between counsel make plain that Plaintiff's settlement position included attorneys' fees.

Plaintiff relies on Webb v. James, 147 F.3d 617 (7th Cir. 1998) to support his claim that because he "has received an enforceable judgment, obtained a benefit to having brought suit, [he] is now the prevailing party in this matter." Plaintiff's Motion, p. 2. This reliance is misplaced. Webb addressed the applicability of Rule 60(b)(1), and held that the question of "excusable neglect" lay within the discretion of the District Court: "The determination is an equitable one, taking into account all of the relevant circumstances of the party's omission." 147 F.3d at 622. In Webb, the trial court concluded that the offeror's failure to mention fees was "a tactical move." Id. at 623. Obviously, that is not the case here—"all of the relevant

- 6 -

circumstances," and the facts of record surrounding the University's Offer of Judgment, compel its dissolution pursuant to Fed. R. Civ. P. 60(b)(1).[3/]

>  II. Applying Contract Principles, the University Should Be Granted Relief from Judgment Because the Offer of Judgment Does Not Express an Objective Manifestation of Mutual Assent.

There is very little law in this state, or in this Circuit, addressing the precise question before this Court: Does a Rule 68 Offer of Judgment that fails to state "including costs and attorneys' fees" allow Plaintiff to secure fees when the contemporaneous written record establishes beyond dispute that the offeror had no intention of paying fees? There are, however, some guidelines.

"In general, principles of contract law apply to determine the terms and effect of offers of judgment under Rule 68." Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass. App. Ct. 764, 772, 843 N.E.2d 706 (2006) (citing Radecki, 858 F.2d at 400); Webb, 147 F.3d at 620. In Nortek, the Massachusetts Court of Appeals reaffirmed the basic principle that "an objective manifestation of mutual assent" is necessary for an offer and acceptance to create a binding agreement. Id. Although the issue has never been explicitly considered by the First Circuit, several other circuits agree. See Basha v. Mitsubishi Motor Credit of America, Inc., 336 F. 3d 451, 453 (5th Cir. 2003) (Rule 68 offers of judgment are analyzed in accordance with contract principles); Mallory v. Eyrich, 922 F.2d 1273, 1279-80 (6th Cir. 1991) (courts apply contract principles to construe Rule 68 judgments where the parties disagree about what was intended).

---

[3/] The Webb Court also observed that challenges to the terms of a Rule 68 Offer of Judgment "undermine the Rule's purpose of encouraging settlement and avoiding protracted litigation." Here, if the Court grants the plaintiff's Motion for Attorneys' Fees, it will most certainly face additional protracted litigation in the form of a hearing on the fee petition itself, to be followed by appellate review.

Here, the University communicated in no uncertain terms its belief that this case had very little value, and that, if it were to settle, it would only do so in the "low five-figure range." Plaintiff's counsel clearly understood the University's position. Ex. A, ¶¶ 8-9 and Attachment 4.

Courts are understandably reluctant "to explore disputes over whether unqualified acceptance of an unambiguous offer accurately reflects the parties' intentions. . . ." Nortek, supra, 65 Mass. App. Ct. at 774 (citing cases). Here, however, the record establishes that the University's intention was clear: to cap the entirety of its exposure at $15,000.

Federal and state courts in this Circuit "may consider parol and extrinsic evidence for the very purpose of deciding whether the documentary expression of the contract is ambiguous." Donoghue v. IBC USA Publications, Inc., 70 F.3d 206, 215 (1st Cir. 1995) (additional citations omitted). An offer that is ambiguous on the question of whether it embraces attorneys' fees should be clarified through the use of extrinsic evidence. Nortek, 65 Mass. App. Ct. at 773.

Where a contract is ambiguous, extrinsic evidence is admissible to shed light on the intent of the offer and the practical construction placed on the agreement by the parties. Cullinet Software, Inc. v. McCormack & Dodge Corp., 400 Mass. 775, 776, 511 N.E.2d 1101 (1987); Hubert v. Melrose-Wakefield Hosp. Assoc., 40 Mass. App. Ct. 172, 177, 661 N.E.2d 1347 (1996). This is particularly appropriate when mistake is alleged. LaFleur v. C. C. Pierce Co., Inc., 398 Mass. 254, 261, 496 N.E.2d 827 (1986); Mickelson v. Barnet, 390 Mass. 786, 792, 460 N.E.2d 566 (1984). Where, as here, the University has presented "full, clear, and decisive" proof of its mistake, it is entitled to rescission. Id. (citing cases).

Principles of equity encourage this Court to "provide affirmative relief by way of rescission where one party made a mistake as to the meaning of a contract and the mistake was known to the other party." Fisher v. Stolaruk Corp., 110 F.R.D. 74, 76 (E.D. Mich. 1986) (citing

13 Williston On Contracts Section 1573 at 486-87 (3rd ed. 1970)). Here, certainly, "the mistake was known to the other party"; Plaintiff counsel's failure to return phone messages and e-mails strongly suggests that she knew of the error and did not want to give the University's attorney the opportunity to correct his mistake. Ex. A, ¶¶ 11-13 and Attachments 5, 6. The Fisher case endorsed Professor Williston's conclusion that "an offeree will not be permitted to snap up an offer that is too good to be true; no agreement based on such an offer can be enforced by the accepter." Id.

The Fisher Court held that "[f]our technical requirements must be satisfied in order to rescind. First, the mistake must be of such consequence that enforcement would be unconscionable. Second, the mistake must be material. Third, the mistake must have occurred regardless of the exercise of ordinary care. Fourth, it must be possible to place the other party in a position of status quo ante." 110 F.R.D. at 76. Certainly, these elements are satisfied here.

In light of the correspondence between counsel that preceded the Offer of Judgment, common sense compels the conclusion that the University would not put itself in a position to allow Plaintiff to secure attorneys' fees and costs of more than eight times the offer itself. The mistake was obviously "material," and its enforcement would be "unconscionable." Counsel for the University exercised ordinary care (notwithstanding his mistake) by relying upon the understandings reached in communications with Plaintiff's counsel that preceded the offer itself. And, finally, rescission will place the parties in the same position they were in as of March 2007—that is, unable to settle the case and preparing for trial.

On the other hand, enforcement of the Offer of Judgment penalizes the client for counsel's error: the omission of just five words ("including costs and attorneys' fees"). It

should not be allowed to undermine the clear and transparent communications accurately reflecting the University's true intention.

      III.    <u>The Offer of Judgment Satisfies So Few, If Any, of the Goals of This Litigation That Plaintiff Cannot Be Considered A Prevailing Party.</u>

The broad brush with which Plaintiff paints his prevailing party argument obscures the details. He cites one decision of the Seventh Circuit that is distinguishable on its facts and a First Circuit decision whose impact has been marginalized by subsequent decisions of both the Supreme Court and this Circuit.

Cases interpreting the concept of "prevailing party" have evolved since 1985, when the United States Supreme Court first addressed its applicability to an offer of judgment tendered under Rule 68. In <u>Marek v. Chesny</u>, 473 U.S. 1, 105 S. Ct. 3012 (1985), the Court observed:

> If defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers. As the Court of Appeals observed, "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff."

473 U.S. at 6. The Court also noted that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." <u>Id.</u> at 10, quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436, 103 S. Ct. 1933 (1983).

The First Circuit first addressed the applicability of attorneys' fees under Rule 68 offers of judgment in <u>Stefan v. Laurenitis</u>, 889 F.2d 363 (1st Cir. 1989). The Court considered the "degree of success" to determine if a party prevailed. A plaintiff may be a prevailing party if he succeeds

> on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. . . . At a minimum, . . .

- 10 -

> the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. . . . [I]f plaintiff's success is so insignificant that it can be characterized as 'purely technical or *de minimis*,' then plaintiff cannot be considered a prevailing party.

889 F. 3d at 368 (citing, and quoting from, Hensley, supra, and Texas State Teachers Ass'n. v. Garland Indep. School Dist., 489 U.S. 782, 109 S. Ct. 1486 (1989).

Plaintiffs in Stefan accepted an offer of judgment for $10,000, and settled with two other parties for $3,000 each. The First Circuit endorsed the trial court's conclusion that $16,000 was "a substantial sum," and that it might serve to "deter future harassment . . . the settlement is 'a resolution of the dispute which changes the legal relationship' between the parties." 889 F.3d at 369 (quoting Texas Teachers, 109 S. Ct. at 1493).

No comparable facts are present in this case. First, there is no ongoing relationship that will be altered. The Offer of Judgment does not change the University's behavior—indeed, it explicitly excludes any reference to restoring Plaintiff's employment or providing him with a recommendation letter, both of which he wanted. See Ex. A, ¶ 7 (and Attachment 4). And, second, the Court may take judicial notice of the fact that the University's Offer of $15,000 in today's marketplace reflects a nuisance value settlement, particularly in light of the claims alleged in this case, described infra, p. 12-13.[4]

In order to determine if a litigant is a prevailing party, a court "must make a qualitative inquiry into the import of the result obtained." Maine School Admin. Dist. No. 35 v. Mr. and

---

[4] By way of contrast, $15,000 in 1988 was, as the Stefan Court observed, " a substantial sum." Due to inflation, $15,000 in 1988 is the equivalent of $28,583 today. Depending on the benchmark used, the "future value" of $16,000 invested nineteen years ago would amount to between $28,583 and $91,299. Ex. B, Affidavit of Martin J. Howard.

Mrs. R, 321 F.3d 9, 15 (1st Cir. 2003); Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293-95 (1st Cir. 2001). In Maine School Administrative District, the First Circuit cited, and approvingly quoted from, Christopher P. v. Marcus, 915 F.2d 794, 804 (2nd Cir. 1990): "[I]t is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit."

The prayer for relief in the Complaint offers a benchmark for measuring Plaintiff's success—or lack of it. He asked for "Reinstate[ment]; . . . Back pay; Front pay; Lost benefits; Emotional distress damages; Punitive damages; Attorneys' fees and costs; Liquidated damages as provided for by statute; [and] Any other relief to which Plaintiff may be entitled." Complaint, p. 7. The Offer of Judgment satisfies none of these demands.

Even if Plaintiff were viewed as a prevailing party in this litigation, a question addressed in the next section of this memorandum, he is not automatically entitled to attorneys' fees because "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566 (citation and internal quotation marks omitted) (where plaintiff sought seventeen million dollars but received only one dollar in nominal damages, his degree of success was so small that "the only reasonable fee [was] no fee at all." Id. at 115).

Plaintiff's sweeping fee petition might be appropriate had this case proceeded to judgment on the merits. In fact, all of the exhibits attached to Plaintiff's motion for attorneys' fees (including counsel's own affidavits, Exhibits C and D) reflect fees awarded for accomplishing something. To be clear, the University does not take issue with the hourly rate requested by counsel. However, their failure to accomplish anything for their client is a variable that weighs heavily.

Courts in this District have recognized that the degree of a plaintiff's success is "a factor critical to the determination of the size of a reasonable fee." Schneider v. Collegio de Abogados de Puerto Rico, 187 F.3d 30, 42 (1st Cir. 1999); Boston's Children First v. City of Boston, 395 F.3d 10, 18 (1st Cir. 2005) (minimal success does not merit an award of attorneys' fees); Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997); Bogan v. City of Boston, 432 F. Supp. 2d 222, 233-34 (D. Mass. 2006).  "If a prevailing party succeeds on all, or substantially all, of her claims, but receives no significant relief (e.g., the jury awards only nominal damages), the trial judge sometimes may deny fees altogether because this scenario often 'highlights the plaintiff's failure to prove actual, compensable injury.' "  Coutin, 124 F. 3d at 339 (quoting Farrar v. Hobby, 506 U.S. 103, 115, 113 S. Ct. 566 (1992)).

Here, it is beyond question that Plaintiff's "victory," measured against the goals of this lawsuit, is the equivalent of nominal damages—without the engagement of judge or jury.  See Section IV, infra.  As the Coutin court observed, "Farrar, then, signifies that fees need not be bestowed if the plaintiff's apparent victory is 'purely technical or *de minimis*.' "  (124 F. 3d at 339) (citing Farrar, 506 U.S. at 117 (O'Connor, J., concurring)).

    IV.    The Supreme Court's Decision in *Buckhannon v. West Virginia Department of Health and Human Resources* Is Fatal to Plaintiff's Claim that He Is a Prevailing Party and, Therefore, He Has No Right to an Award of Attorneys' Fees.

In Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835 (2001), the Supreme Court held that a "prevailing party" is one who has been awarded some relief by a court.  Judgments on the merits and court-ordered consent decrees compel a material alteration of the parties' legal relationship, and thus permit an award of attorneys' fees.  But "a defendant's voluntary change in conduct,

although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*." 532 U.S. at 605 (emphasis in original).

The Buckhannon Court explicitly rejected awarding fees under the "catalyst theory," which would characterize a plaintiff as a prevailing party if it achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. Id. at 601. These issues have also been addressed in the First Circuit. Smith v. Fitchburg Public Schools, 401 F.3d 16, 22-23 (1st Cir. 2005); Doe v. Boston Public Schools, 358 F.3d 20, 24-25 (1st Cir. 2004). In this jurisdiction, the concept of "judicial imprimatur" means that "in order to prevail, a party must achieve a 'court-ordered' change in the legal relationship of the parties." Doe v. Boston Public Schools, 358 F.3d 20, 24 (quoting Buckhannon, 532 U.S. at 606).

The First Circuit has not yet decided "whether judgments on the merits or consent decrees are the only forms of relief sufficient to confer prevailing party status, whether a functional equivalent of such relief may be adequate, or whether any other types of relief could satisfy Buckhannon's requirements." Smith, 401 F.3d at 23. The Smith Court looked at cases from other circuits applying Buckhannon and concluded that there was one critical, and common, variable: the requirement of "the judge's substantial involvement providing the necessary judicial imprimatur on the change in the legal relationship between the parties." Id. Without that, a litigant cannot obtain prevailing party status or an entitlement to attorneys' fees.

In Smith, the Court concluded that plaintiff's success by way of a settlement agreement "requiring Fitchburg to follow through with what Fitchburg had already voluntarily promised to do," was insufficient to award plaintiff prevailing party status. Her request for attorneys' fees was denied. 401 F.3d at 27. Put another way, the absence of judicial approval and oversight was fatal to plaintiff's claim for fees. See also Boston's Children First, supra, 395 F.3d at 14-15

- 14 -

(plaintiffs were prevailing parties because the court ordered defendants to pay damages); Doe, supra, 358 F.3d at 30 (under the IDEA, plaintiffs who achieve their desired result via private settlement may not, in the absence of judicial imprimatur, be considered prevailing parties); Maine Admin. School Dist. No. 35 v. Mr. and Mrs. R, 321 F.3d 9, 14-15 (1st Cir. 2003) (plaintiffs were prevailing parties because court had denied defendant's motion for injunctive relief, which was, in effect, a final judgment on the merits); Race v. Toledo-Davila, 291 F.3d 857, 858 (1st Cir. 2002) (plaintiff was not a prevailing party because the court had not addressed the merits of his claim).

This Court does not have to enter uncharted waters or reach a sweeping conclusion about the interplay between the offers of judgment and prevailing party status. The terms of the Rule 68 Offer of Judgment in this case constitute neither a judgment on the merits nor a court-ordered consent decree—it is simply an offer of money, accompanied by only one caveat: "This Offer is not to be construed either as an admission of liability or that Plaintiff has suffered any damage as a result of the acts or omissions of Defendant." It does not engage the Court in monitoring its terms or the conduct of the parties. It is simply an offer to pay for the dismissal of the litigation.

The First Circuit prohibits the creation of prevailing party status in the absence of some judicial engagement. Here, there is none. The trial court's function—to enter judgment on a Rule 68 Offer that has been accepted—is purely "ministerial." Ducharme v. State of Rhode Island, 30 F.3d 126 *4 (No. 93-1675, 1st Cir. 1994) (unpublished). The Court has no substantive role, and does not "effect" the change in the legal relationship between the parties: the University offered a fixed sum, and Plaintiff accepted. This constitutes a "voluntary change in conduct" (Buckhannon, 532 U.S. at 605) in which the Court had absolutely no involvement. Thus Plaintiff does not satisfy the First Circuit's prerequisite to gaining prevailing party status,

and he has no right to attorneys' fees. <u>Smith</u>, 401 F.3d at 22 (because plaintiff has failed to secure prevailing party status, he is not entitled to attorneys' fees).

The First Circuit's analysis in <u>Smith</u> and the more recent cases addressing this question have rendered the <u>Stefan</u> court's prevailing party analysis obsolete. Plaintiff's reliance on <u>Stefan</u> (incompletely cited in Plaintiff's Motion for Attorneys' Fees and Costs at n.2) has no value. Contemporary rulings in this Circuit require, as a prerequisite to an award of attorneys' fees, (1) an analysis of the degree of success; and (2) a change in the legal relationship between the parties, which (3) resulted from judicial involvement. Plaintiff has failed to meet these standards: his success was *de minimis* (particularly in relationship to the goals of this litigation); the modest sum does not constitute a meaningful change in the parties' relationship; and there has been no judicial involvement. His claim for attorneys' fees must be denied.

      V.     <u>Plaintiff Waived the Arguments He Failed to Raise in His Motion for Attorneys' Fees and Costs, and Should Not Be Allowed to File Another Brief on This Matter.</u>

Local Rule 7.1(B)(1) of the United States District Court for the District of Massachusetts states, in part, that "[a] party filing a motion shall <u>at the same time</u> file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted." (Emphasis added.) This rule has two purposes: first, to inform the Court of the reasons for the motion; and, second, to give the <u>non-movant</u> the opportunity to evaluate and respond to the merits of the motion openly and fairly. Here, Plaintiff has attempted to turn the tables on the University and, by proxy, the Rules of this Court. He has filed a bare-bones brief, punctuated with the following audacious footnote:

> In the interest of not expending unnecessary time briefing issues
> that may not be in dispute, Walsh has kept this motion relatively
> brief. Because he does not know yet what issues BU will raise in
> opposition to this fee application, Walsh requests the opportunity

>to respond in a reply brief to any issues that BU may set forth in
>opposition to this motion.

Plaintiff's Motion for Attorneys' Fees and Costs, fn.1.  In other words, Plaintiff wants the University to respond to a motion even though Plaintiff has set forth only marginal justification for his claim for relief.  This is advocacy by ambush of the worst kind.[5]

Plaintiff's tactical decision to hold back his fire has put the University in the position of setting up a straw man and arguing in a vacuum.  The University has been forced to create hypothetical justifications for Plaintiff's claim to fees, and then rebut them.  Courts in this jurisdiction do not look kindly on this sort of tactic.  In <u>Sandstrom v. ChemLawn Corp.</u>, 904 F.2d 83 (1st Cir. 1990), the Court of Appeals held that:

>. . . in the absence of exception circumstances . . . , arguments which could have been timely raised, but were not, will be rejected.  If counsel are routinely allowed to approach the District Court with studied nonchalance and are excused from doing their homework until the case is on appeal, scarce judicial resources will be squandered. . . .  When, as here, the argument is not seasonably presented on appeal, the difficulties we have just enumerated are compounded:  the appellee is given no fair chance to respond to a theory which emerges for the first time in the appellants' reply brief, and the Court of Appeals is left with but one side of a two-sided story.

904 F.2d at 87.  Here, Plaintiff's "studied nonchalance" puts the University in the position of the appellee in <u>Sandstrom</u>.

Ironically, it appears that Plaintiff actually expended time and legal resources on the issues it has failed to brief:  Exhibit A to Plaintiff's Motion ("Walsh Invoice") records more than twenty-four hours of time spent researching caselaw and drafting the fee petition.  Counsel's

---

[5] Plaintiff's gamesmanship is highlighted by his failure to confer with counsel for the University prior to filing his Motion for Attorneys' Fees as required by L.R. 7.1(A)(2).  <u>See</u> fn.1, <u>supra</u>, p. 3, and Ex. A, ¶¶ 11-13.

- 17 -

claim that Plaintiff "does not know yet what issues BU will raise in opposition to this fee application" (Plaintiff's Motion, fn.1) is disingenuous.

If the University had filed a motion for summary judgment, cited a few cases, and announced that it would wait to see Plaintiff's opposition before filing its substantive defense, the Court could rely on appellate authority to hold that arguments not briefed are waived. U.S. v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007); Forcier v. Metropolitan Life Ins. Co., 469 F.3d 178, 183 (1st Cir. 2006); U.S. v. Isler, 429 F.3d 19, 30 n.12 (1st Cir. 2005); U.S. v. Evans-Garcia, 322 F.3d 110, 114 (1st Cir. 2003); Kelly v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002); U.S. v. Brennan, 994 F.2d, 918, 922 n.7 (1st Cir. 1993); Sheppard v. Aloisi, 384 F. Supp. 2d 478, 493 n.12 (D. Mass. 2005). The same principle should apply here. Local Rule 7.1(B)(3) requires the Court's permission to file a reply brief. In order to ensure absolute fairness, Plaintiff should not benefit from an underhanded tactical move, and this Court should decline to grant Plaintiff any such entitlement.

## CONCLUSION

Plaintiff seeks to carve for himself an undeserved prize that has an inverse relationship to the actual accomplishment that has resulted from this litigation. The Offer of Judgment reflects the absence of success, rather than any degree of it. He has not prevailed in any aspect of this litigation.

The record, the caselaw, and common sense compel the conclusion that Boston University intended to limit its exposure to $15,000—including costs and attorneys' fees—when it sent Plaintiff the Offer of Judgment. Federal Rule 60(b)(1) was designed to insure that parties are not unfairly penalized by errors of this sort—the omission of merely five words. Plaintiff will suffer neither harm nor prejudice, and justice will be served, if this Court restores the status

quo and grants the University's Motion for Relief from Judgment and denies Plaintiff's Motion for Attorneys' Fees.

                Respectfully submitted,

                TRUSTEES OF BOSTON UNIVERSITY,
                By its attorney,


                s/Lawrence S. Elswit
                Lawrence S. Elswit
                (BBO #153900)
                Boston University
                Office of the General Counsel
                125 Bay State Road
                Boston, Massachusetts  02215
Date:  April 30, 2007          (617) 353-2326