### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WALSH, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 04-11240-RCL |
| TRUSTEES OF BOSTON UNIVERSITY, | ) |
| Defendant. | ) |

### AFFIDAVIT OF LAWRENCE S. ELSWIT

The affiant, Lawrence S. Elswit, being duly sworn, states:

1.  I represent the defendant, Trustees of Boston University, in the above-referenced case.

2.  During the course of this litigation, Plaintiff's counsel, Rebecca Pontikes, Esq., and I developed a collegial and generally positive working relationship. At different times, we discussed the possibility of settlement. I invariably communicated the University's position that this case had no merit, and that, if it could not be settled for nuisance value, my clients were prepared to go to trial. I also told Ms. Pontikes that, since I would try the case, the University would incur no outside counsel fees and, thus, it did not have the pressure to reduce external costs as an incentive to settle.

3.  Ms. Pontikes and I first discussed the possibility of settling this case on January 25, 2005 (see Joint Statement Pursuant to Local Rule 16.1(D) (Docket No. 13)). I told Ms. Pontikes that I thought the case had nuisance value. On January 27, she sent me an e-mail indicating that her client was not willing to settle for a nominal sum. See Attachment 1.

4. On March 21, 2006, Ms. Pontikes sent me a letter stating, in relevant part:

> Mr. Walsh is motivated to settle this claim at this time. Therefore, he agrees to limit his demand to his lost wages <u>and attorneys' fees</u> at this time and for settlement purposes only. Limited in this way, Mr. Walsh demands $220,000 to settle his claim.

(Emphasis added.)  <u>See</u> Attachment 2.

5. Later that afternoon, I sent an e-mail to Ms. Pontikes, indicating the University's position:

> At this time the University is not willing to make a counteroffer. I don't think that mediation makes much sense, either, because we believe this case has nothing more than nuisance value, and the University will not put anything remotely approaching your demand on the table. That said, I welcome the chance to talk with you informally if you think it will be productive.

<u>See</u> Attachment 3.

6. Our conversations continued over the next several months. At different times, Ms. Pontikes asked if the University would consider re-hiring Mr. Walsh. (I told her that was out of the question, because the risks of future problems, and future charges of retaliation, were too great.) Our discussions became more sharply focused this winter, after the parties received notice of the then-scheduled final pre-trial conference. In early February, Ms. Pontikes told me that, between attorneys' fees, back pay, and other aspects of damages, her client's demand to settle the case was $250,000. She also again suggested that the parties mediate. I responded that the case had a settlement value of less than ten percent of that figure. I told Ms. Pontikes that the University would consider a settlement in the neighborhood of $5-10,000.

7. On February 15, 2007, I sent Ms. Pontikes an e-mail, both responding to her settlement demand and informing her that her client had applied for a job with, and asked for a recommendation from, the University's Dean of Students, Kenneth Elmore. I advised

Ms. Pontikes that the Dean would consider writing a recommendation letter if the case settled, but that her settlement demand was out of the question:

> . . . [M]y clients have no interest in a settlement in the neighborhood of $250,000, and unless <u>you and Mr. Walsh</u> are willing to consider a settlement along the lines I proposed, I'm not sure there is any benefit to mediation. My clients and I firmly believe that this matter was handled properly and patiently, and that the case has nuisance value, no more than that. . . .

(Emphasis added.)

8.  Ms. Pontikes responded on February 16, again discussing mediation. On February 28, I sent her another note that stated, in part:

> The University has decided not to mediate this case unless we receive a commitment that your client, <u>and your firm</u>, are prepared to settle this case in the low five-figure range. We strongly believe that this case has no intrinsic value and do not want to be force-fed a Solomonesque settlement. . . .

(Emphasis added.)

9.  Ms. Pontikes's reply arrived later in the afternoon, acknowledging that the parties could not settle the case. <u>See</u> Attachment 4.

10. On March 6, I sent Ms. Pontikes the Offer of Judgment that is the subject of this phase of the litigation.

11. On March 16, 2007, I received notice that the plaintiff had accepted Boston University's Offer of Judgment in the amount of $15,000. That afternoon I placed two telephone calls to Plaintiff's counsel, Ms. Pontikes. She did not return those calls. I placed another call on Monday, March 19, which was not returned.

12. On Wednesday, March 21, I sent Ms. Pontikes an e-mail. She responded, informing me that she was leaving her firm. I sent a note of congratulations and encouraged her to ask the partner overseeing the case, Shannon Liss-Riordan, to call me. See Attachment 5.

13. Neither Ms. Pontikes nor Ms. Liss-Riordan responded to that e-mail, or returned phone calls placed on Friday, March 23. Late that afternoon, I sent an e-mail expressing my frustration and disappointment that I had not heard from them. See Attachment 6.

14. On Monday, March 26, I received this Court's electronic notification of Plaintiff's petition for attorney's fees.

Further affiant sayeth not.

Subscribed and sworn under the penalties of perjury.

/s/ Lawrence S. Elswit
Lawrence S. Elswit

Date: April 30, 2007