UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN WALSH, ) | |
|   Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 04-11240-RCL |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
|   Defendant. ) | |

DEFENDANT TRUSTEES OF BOSTON UNIVERSITY'S
OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

INTRODUCTION

On September 28, 2007, the Court (Hon. Marianne B. Bowler, U.S.M.J.) filed a Report and Recommendation denying Defendant Trustees of Boston University's (the "University") motion for relief from Judgment and directing the entry of a Rule 68 Judgment against the University in the amount of $15,000.[1] On November 8, 2007, the Court (Hon. Reginald C. Lindsay, U.S.D.J.) adopted Judge Bowler's Report. Judgment entered on December 12, 2007.

The issues currently before this Court are (1) whether Plaintiff is a prevailing party, and (2) if so, whether, and to what extent, he is entitled to an award of attorneys' fees. The parties addressed certain aspects of these issues in the previous phase of this case, but the procedural

---

[1] That decision summarizes the relevant procedural and factual history and does not require repetition here.

posture (see Report and Recommendation at 8-10, 42) rendered those arguments premature. They are now ripe for decision.[2]

## ARGUMENT

Plaintiff's request for fees should be denied. The circumstances surrounding the Offer of Judgment confirm that he has not met the prevailing party requirements in this Circuit. Even if Plaintiff were a prevailing party, however, this Court "has a right – indeed, a duty – to see whether counsel substantially exceeded the bounds of reasonable effort." Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212, 218 (D. Mass. 2004) (internal citations omitted); Access 4 All, Inc. v. Delancey Clinton Associates, L.P., Civil Action No. 04-12347, 2007 WL 118940, *1 (D. Mass. Jan. 8, 2007) ("the court must necessarily engage in a thoughtful analysis of the number of hours expended and the hourly rates charged to ensure both are reasonable") (internal citations omitted). Although Plaintiff's timesheets (8 summary pages) do not provide enough information to evaluate what work was performed, they make clear that counsel spent far more time than was reasonable. Plaintiff seeks fees for more than five hundred hours billed by three lawyers and two paralegals—for a case that never approached trial. Plaintiff's rates are at the high end of, or exceed, the recognized range of court-awarded hourly rates for this type of work.

---

[2] Plaintiff suggests that by not actively opposing "the reasonableness of the fee rates or time expended in Plaintiff's original lodestar fee request" (Motion at 9), those issues are no longer before the Court. That argument fails for several reasons. First, the issues of hourly rates and time expenditures were not ripe for decision when Plaintiff filed his fee petition because judgment had not been entered. Thus the Court did not consider the question. The issue now takes center stage. Furthermore, "[t]his court is required to conduct an analysis of what a reasonable attorneys' fees award should constitute." Bogan v. City of Boston, 432 F. Supp. 2d 222, 228 (D. Mass. 2006) (emphasis added).

Finally, Plaintiff's suggestion that the University somehow "waived" any right to contest the award of fees is flat-out wrong. The University specifically urged the Court to exercise its discretion to reduce any fee award in its Memorandum in Support of Motion for Relief from Judgment and in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs [Docket No. 38 at p. 4 n.2].

Finally, even if Plaintiff is entitled to fees as a prevailing party, his extraordinarily limited success compels the Court to reduce substantially the result of the lodestar calculation.

> I. The Offer of Judgment Satisfies So Few of the Goals of this Litigation that Plaintiff Cannot Be Considered a Prevailing Party.

Plaintiff asks this Court to conclude that because he has a judgment in his favor, he prevailed, and is therefore a "prevailing party." Motion at 5. But the broad brush with which he paints obscures the details. The Report (at 40) held that cases analyzing prevailing party status "placed an emphasis upon achieving a ruling on the substantive merits" (citing Sole v. Wyner, ___ U.S. ___, 127 S. Ct. 2188, 2191-92 (2007)). Although case law does not require a party to win all its substantive claims to "prevail," a judgment of nominal damages, as here, does not automatically confer the desired status.

In order to determine if a litigant is a prevailing party, a court "must make a qualitative inquiry into the import of the result obtained." Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R, 321 F.3d 9, 15 (1st Cir. 2003); Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 293-95 (1st Cir. 2001). In Maine School Administrative District, the First Circuit cited, and approvingly quoted from, Christopher P. v. Marcus, 915 F.2d 794, 804 (2nd Cir. 1990): "[I]t is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit."[3]

The prayer for relief in the Complaint offers a benchmark for measuring Plaintiff's success—or lack of it. He asked for "Reinstate[ment]; . . . Back pay; Front pay; Lost benefits;

---

[3] Plaintiff cites Stefan v. Laurentis, 889 F. 2d 303 (1st Cir. 1989) to support his argument that the monetary judgment automatically endows him with prevailing party status. That argument is incorrect: in Stefan (as in the cases cited above), the Court engaged in a "qualitative inquiry" (Maine Schl. Admin. Dist. No. 35, 321 F. 3d at 15) when it determined that the resolution—a $16,000 settlement—was not *de minimis* and that "on the totality of the circumstances presented" plaintiffs were prevailing parties. 889 F.2d at 369. The point is that there is no automatic entitlement.

Emotional distress damages; Punitive damages; Attorneys' fees and costs; Liquidated damages as provided for by statute; [and] Any other relief to which Plaintiff may be entitled." Complaint, p. 7.  The Judgment satisfies <u>none</u> of these demands.

In <u>Buckhannon Board and Care Home, Inc., v. West Virginia Dept. of Health and Human Resources</u>, 532 U.S. 598 (2001), the Court held that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."  532 U.S. at 605.  The Supreme Court observed that attorneys' fees are awarded to plaintiffs who receive judgment on the merits or secure Court-ordered consent decrees, but that fees are not awarded in cases involving "non-judicial 'alteration of actual circumstances.'"  <u>Id.</u> at 633.  That is exactly the situation in this case.

Although one of the objections noted in the Report (at 42) has been satisfied by the entry of Judgment, this Court's other requirement, well-grounded in the case law, has not been met: "Plaintiff has <u>also</u> not obtained a 'judge's substantive involvement' to provide 'the necessary judicial imprimatur' that effectuated a material alteration in the parties' legal relationship."  <u>Id.</u> at 42, quoting from <u>Smith v. Fitchburg Public Schools</u>, 401 F.3d 16, 24-25 (1st Cir. 2005) (emphasis added).  Thus a fair reading of the Report and Recommendation leads to the conclusion that to secure prevailing party status, Plaintiff not only must obtain a final judgment but must <u>also</u> secure the Court's "substantive involvement."

In <u>Stefan v. Laurentis</u>, supra n.3, plaintiffs accepted an offer of judgment for $10,000, and settled with two other parties for $3,000 each.  The First Circuit endorsed the trial court's conclusion that $16,000 was "a substantial sum," and that it might serve to "deter future harassment . . . the settlement is 'a resolution of the dispute which changes the legal relationship'

- 4 -

between the parties." 889 F.2d at 369 (internal quotations omitted). Regardless of the parties' conflicting views about whether the present value of a $15,000 settlement in this case is "a substantial sum," there is no ongoing relationship that will be altered. The Judgment does not change the University's behavior—indeed, it explicitly excludes any reference to restoring Plaintiff's employment or providing him with a recommendation letter, both of which he wanted. See Report at 5, and Docket Entry 38, Ex. A, ¶ 7. Furthermore, the resolution of this case neither creates new law, advances the frontiers of civil rights for disabled individuals, nor "deter[s] future harassment." Stefan, 889 F.2d at 369. The outcome in this case is solely the result of an error by counsel.

In Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007), the Court of Appeals affirmed this Court's analysis of a successful plaintiff's fee petition, and specifically rejected the argument that the Magistrate Judge failed to consider the "societal importance" of the litigation. 489 F. 3d at 430 n.10. Here, Plaintiff has not accomplished anything of social value. Rather, the resolution of this case is comparable to the settlement of a common law tort claim. The University voluntarily offered money, Plaintiff accepted the offer, and the Court performed a ministerial act by executing the judgment.

In Buckhannon, the Supreme Court explicitly rejected awarding fees under the "catalyst theory," which would characterize a plaintiff as a prevailing party if it achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. 532 U.S. at 601. These issues have also been addressed in the First Circuit. Smith, 401 F.3d at 22-23; Doe v. Boston Public Schools, 358 F.3d 20, 24-25 (1st Cir. 2004). In this jurisdiction, the concept of "judicial imprimatur" means that "in order to prevail, a party must achieve a

'court-ordered' change in the legal relationship of the parties." Doe, 358 at 24 (quoting Buckhannon, 532 U.S. at 606).

The First Circuit has not yet decided "whether judgments on the merits or consent decrees are the only forms of relief sufficient to confer prevailing party status, whether a functional equivalent of such relief may be adequate, or whether any other types of relief could satisfy Buckhannon's requirements." Smith, 401 F.3d at 23. Nonetheless, in this Circuit, "the judge's substantial involvement providing the necessary judicial imprimatur on the change in the legal relationship between the parties" is a prerequisite to obtaining prevailing party status and attorneys' fees. Id.

The Smith Court concluded that a settlement agreement, "requiring Fitchburg to follow through with what Fitchburg had already voluntarily promised to do," was insufficient to award plaintiff prevailing party status, and denied her request for attorneys' fees. 401 F.3d at 27. The absence of judicial approval and oversight was fatal to her claim for fees. See also Boston's Children First v. City of Boston, 395 F.3d 10, 14-15 (1st Cir. 2005) (plaintiffs were prevailing parties because the court ordered defendants to pay damages); Doe, 358 F.3d at 30 (plaintiffs who achieve desired result via private settlement are not, in the absence of judicial imprimatur, prevailing parties); Maine Admin. School Dist. No. 35, 321 F.3d at 14-15 (plaintiffs were prevailing parties because court had denied defendant's motion for injunctive relief, which was, in effect, a final judgment on the merits); Race v. Toledo-Davila, 291 F.3d 857, 858 (1st Cir. 2002) (plaintiff was not a prevailing party because the court had not addressed the merits of his claim).

Significantly, all these cases included fee-related litigation after the substantive issues in the cases had been resolved. Contrary to Plaintiff's argument (Motion at 4), that does not amount to substantive judicial involvement in the merits.

Plaintiff cites Boston Children's First and Wagner v. City of Holyoke, 404 F.3d 504 (1st Cir. 2005) to support his claim that a judgment for nominal damages automatically makes him a prevailing party. But these cases are inapposite. In Wagner, Plaintiff's award followed a jury trial. It does not appear that the parties litigated the question of whether Plaintiff was a prevailing party, but, notably, the Court of Appeals held that he "may be entitled to such fees as the district court finds appropriate given the proportionate success he has achieved." 404 F.3d at 509 (emphasis added). Boston Children's First was resolved following a bench trial.[4] Both of these cases required a court's "substantive involvement."

This Court does not have to enter uncharted waters or reach a sweeping conclusion about the interplay between offers of judgment and prevailing party status. The Rule 68 Offer of Judgment, and now, the Judgment in this case constitute neither a decision on the merits nor a court-ordered consent decree—it is simply an offer of money, accompanied by only one caveat: "This Offer is not to be construed either as an admission of liability or that Plaintiff has suffered any damage as a result of the acts or omissions of Defendant." It does not engage the Court in monitoring its terms or the conduct of the parties. It is simply an offer (which was accepted) to pay for the dismissal of the litigation.

---

[4]  Notwithstanding the plaintiffs' prevailing party status in Boston Children's First, they were awarded no attorneys' fees in that case. 395 F.3d at 18.

The First Circuit prohibits the creation of prevailing party status in the absence of some judicial engagement. Here, there is none. The trial court's function—to enter judgment on a Rule 68 Offer that has been accepted—is purely "ministerial." Ducharme v. State of Rhode Island, 30 F.3d 126 *4 (No. 93-1675, 1st Cir. 1994) (unpublished). The Court has no substantive role, and does not "effect" the change in the legal relationship between the parties: the University offered a fixed sum, and Plaintiff accepted. This constitutes a "voluntary change in conduct" (Buckhannon, 532 U.S. at 605) in which the Court had absolutely no involvement. Thus Plaintiff does not satisfy the First Circuit's prerequisite to gaining prevailing party status, and he has no right to attorneys' fees. Smith, 401 F.3d at 22.

Contemporary rulings in this Circuit require, as a prerequisite to an award of attorneys' fees, (1) an analysis of the degree of success; and (2) a change in the legal relationship between the parties, which (3) resulted from judicial involvement. Plaintiff has failed to meet these standards: his success was *de minimis* (particularly in relation to the goals of this litigation); the modest sum does not constitute a meaningful change in the parties' relationship; and there has been no judicial involvement. His claim for prevailing party status and attorneys' fees must be denied.

II.     The Court Should Exercise Its Discretion to Reduce Any Fees Award.

Even if Plaintiff were viewed as a prevailing party in this litigation, he is not automatically entitled to attorneys' fees because "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (internal citations omitted). As the Supreme Court explained, where plaintiff sought seventeen million dollars but received only one dollar in nominal damages, his degree of success was so small that "the only reasonable fee [was] no fee at all." Id. at 115.

Plaintiff's sweeping fee petition might be appropriate had this case proceeded to judgment on the merits. In fact, all of the exhibits attached to Plaintiff's motion for attorneys' fees (including counsel's own affidavits, Exhibits C and D) reflect fees awarded for accomplishing something. Here, counsel's failure to accomplish anything for their client—who benefits solely because of an error by opposing counsel—is a variable that weighs heavily.

Courts in this District have recognized that the degree of a plaintiff's success is "a factor critical to the determination of the size of a reasonable fee." Schneider v. Collegio de Abogados de Puerto Rico, 187 F.3d 30, 42 (1st Cir. 1999); Boston's Children First, 395 F.3d at 18 (minimal success does not merit an award of attorneys' fees); Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997); Bogan, 432 F. Supp. 2d at 233-34. "If a prevailing party succeeds on all, or substantially all, of her claims, but receives no significant relief (e.g., the jury awards only nominal damages), the trial judge sometimes may deny fees altogether because this scenario often 'highlights the plaintiff's failure to prove actual, compensable injury.' " Coutin, 124 F. 3d at 339 (quoting Farrar, 506 U.S. at 115).

Plaintiff's reliance on Coutin does not advance his argument. First, the case involved a jury trial of a Title VII employment discrimination case. Judge Selya observed that

> results obtained [is] a preeminent consideration the fee-adjustment process. . . . But the term "results obtained" has a variety of meanings. It can refer to a plaintiff's success claim by claim, or to the relief actually achieved, or to the societal importance of the right which has been vindicated, or to all of these measures in combination.

124 F. 3d at 338, and see discussion at 339 ff.  Here, the award Plaintiff seeks fails to meet any of these measures.[5]

It is beyond question that Plaintiff's "victory," measured against the goals of this lawsuit, is the equivalent of nominal damages—without the engagement of judge or jury.  See pp. 3-4, supra.  As the Coutin court observed, "fees need not be bestowed if the plaintiff's apparent victory is 'purely technical or *de minimis*.'"  124 F. 3d at 339) (citing Farrar, 506 U.S. at 117 (O'Connor, J., concurring)).

Before fees can be granted, the Court "is required to conduct an analysis of what a reasonable attorneys' fee award should constitute."  Bogan, 432 F.Supp.2d at 228.  The lodestar approach used in this Circuit requires the Court to ascertain "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" as the starting point of the analysis.  Coutin, 124 F.3d at 337 (internal quotations omitted).[6]  Once the Court makes that calculation, it may exercise its authority to adjust the lodestar, including "reduc[ing] the award to

---

[5] On the twelfth page of Plaintiff's motion—after the first nine pages, each subsequent page is numbered "1"—Plaintiff quotes Coutin at "124 F. 3d at 334" for the position that "jury's failure to award punitive damages was not a 'failed claim' and did not support a 'claims-based, results-obtained fee reduction.'"  This quotation, which appears at page 340 of the Coutin decision, is taken out of context, thereby suggesting that the First Circuit meant what it did not say.  The entire passage is:

> From a claim-by-claim standpoint, the appellant prevailed up and down the line. She triumphed on every substantive claim under both federal and Puerto Rico law.  In so doing she achieved a 100% success rate—and complete success is hardly "limited."  Consequently, a claims-based, results-obtained fee reduction is wholly inappropriate.

124 F. 3d at 340.  Plaintiff counsel's blatant misrepresentation of a ruling of the Court of Appeals undermines the integrity of his entire argument.

[6] Plaintiff is no doubt well-aware of this principle.  In Wennik v. Polygram Group Distribution, Inc., 304 F.3d 123 (1st Cir. 2002), the First Circuit stated that it "has a duty to review carefully the basis for the award and to ensure that the amount is reasonable." Id. at 134.  The Court of Appeals reversed a fee award to Plaintiff's counsel, one of whom was Ms. Liss-Riordan, where, among other things, one lawyer billed "twenty-eight hours of work in one day by one attorney." Id. at 135.

- 10 -

account for the limited success." Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1191 (1st Cir. 1996).

The hours spent by Plaintiff's counsel on this matter are unreasonable, and their proposed billing rates are excessive. Both should be reduced substantially. The Court should also reduce the product of that calculation because of the strikingly limited success that Plaintiff achieved. "The ultimate goal is to award fees 'adequate to attract competent counsel but which do not produce windfalls.'" Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984) (quoting Hensley v. Eckerhart, 461 U.S. 424 at n.4 (1983)).

### A. Plaintiff's Claimed Hours Are Unreasonable

Plaintiff seeks to recover for more than five hundred hours of lawyer and paralegal time totaling more than $130,000. But his attorneys failed to submit the "detailed contemporaneous time records" required for a fee petition, and consequently the award should be reduced. Grendel's Den, 749 F.2d at 952. There are several entries of significant blocks of time with little or no explanation how that time was spent or its relationship to Plaintiff's case. For example, two paralegals spent a total of 53.4 hours, often in 5-plus hour increments, and their efforts are consistently described only as: "review documents; create spreadsheets." Even worse, there are a number of entries that appear to contain only part of the relevant description. For example:

| | |
|---|---|
| 8/9/05 (RGP – 4.8 hours) | office; Email Atty. Elswit; Telephone call w/Roberta Roberts; Email to client; |
| 8/1/06 (RGP – 5.3 hours) | argument; email to Mr. Walsh; revise spreadsheet of absences; revise affidavit of Mr. Walsh; revise statement of additional facts; continue to outline argument. |

Plaintiff should not be permitted to recover for these types of entries. Nor should Plaintiff be entitled to recover for "block-billed" entries. He is required to submit records in which time is

recorded in small increments that make clear what work was performed. Jacobs v. Mancuso, 825 F.2d 559, 563 (1st Cir. 1987)) (concluding that "block-billed" entries should be considered one-half core and one-half non-core services). There are a number of "block-billed" entries for which there are several tasks allotted to a large block of time without specifying the time spent on each tasks. For example:

| | |
|---|---|
| 2/7/05 (RGP – 3.5 hours) | Reply to client's email; Read Gluckenberger [sic] cases; |
| 4/12/05 (RGP – 8.5 hours) | Review draft interrogatories [sic] answers from client and respond to client's e-mail. |

In addition, the Plaintiff spent an unreasonable number of hours preparing pleadings, reviewing documents and preparing for depositions. For example, the University filed its Motion for Summary Judgment on April 21, 2006. Plaintiff did not oppose that motion until August 28, 2006, more than four months later. During that period, Plaintiff sought and obtained three extensions of time and spent more than 100 hours preparing an opposition. After filing the opposition, Plaintiff spent more than 30 hours of lawyer time preparing for and arguing the summary judgment motion. The time spent on this matter was clearly excessive. Compare Dixon v. Int'l Brotherhood of Police Officers, 434 F. Supp. 2d 73, 81 (D. Mass. 2006) (finding that 32.8 hours for each of five oppositions to summary judgment motions was excessive); Wilcox v. Stratton Lumber, Inc., 921 F. Supp. 837, 846 (D. Me. 1996) (finding that two attorneys each spending 35 hours preparing opposition to summary judgment was excessive); Grendel's Den, 749 F.2d at 953 n.8 (questioning reasonableness of 34 hours spent preparing for oral argument by Professor Lawrence Tribe of Harvard Law School). Moreover, both Ms. Liss-Riordan and Ms. Pontikes prepared for and attended the argument on the motion to dismiss (more than 15 hours) and the argument on the summary judgment. Cf. McDonough v.

City of Quincy, 353 F.Supp.2d 179, 185 (D. Mass. 2005) ("duplicative work ought not be considered in the calculation of attorney's fees").

Furthermore, Plaintiff's claim under M.G.L. ch. 93 § 103 was dismissed. [Docket No. 4]. By the time the Court dismissed that Count on January 31, 2005, Plaintiff's counsel had already billed more than eighty hours, including forty-five hours briefing and arguing the motion to dismiss. The time spent should be reduced accordingly. Gay Officers Action League, 247 F.3d at 297.

Plaintiff also seeks to recover $200 per hour for 37.1 hours allegedly billed by Attorney David Milton, although he did not file an affidavit, and is only referenced in a footnote in Plaintiff's motion (at p. 3 n.5, and spreadsheet). Mr. Milton is not identified on Plaintiff's counsel's website (www.prle.com) as an attorney working at that firm. It appears that Ms. Liss-Riordan relied on Mr. Milton's research services after Ms. Pontikes left the firm. [See Docket No. 35.] Mr. Milton billed time for reading the relevant motions and billed the majority of his time in 5+ hour blocks conducting "research" and "working on opposition." Mr. Milton's research likely repeated or at least overlapped substantially with much of the research previously conducted by Ms. Pontikes. See Gay Officers Action League, 247 F.3d at 298 ("Where tag teams of attorneys are involved, fee applications should be scrutinized with especial care."). Plaintiff should not be permitted to recover for Mr. Milton's undocumented, unsubstantiated and unnecessary time.

Under these circumstances, the hours billed by counsel for Plaintiff were entirely unreasonable and should be reduced substantially.

### B.     The Hourly Rates Sought By Plaintiff Are Unreasonable

In order to complete the loadstar calculation the Court must determine the "prevailing rates in the community (taking into account the qualifications, experience and specialized competence of the attorneys involved)." Gay Officers Action League, 247 F.3d at 295.  In making that assessment, the court "may take guidance from, but is not bound by, an attorney's standard billing rate." Brewster v. Dukakis, 3 F.3d 488, 492-93 (1st Cir. 1993).  The prevailing rate for "lead civil rights attorneys in the Boston area ranges between $200 and $350 per hour. . . . With respect to assisting counsel, a reasonable hourly rate falls between $100 and $200 per hour." Cerqueira v. American Airlines, Inc., 484 F. Supp. 2d 241, 250 (D. Mass. 2007), rev'd on other grounds, 2008 WL 104105 (1st Cir. Jan. 10, 2008).  Paralegals reasonably bill between $50 and $65 per hour. Id. at 250; McDonough, 353 F.Supp.2d at 189.  Plaintiff's counsel seeks attorneys' fees at or above these ranges, including the rate of $350 per hour for Shannon Liss-Riordan, $275 per hour for Rebecca Pontikes, $200 per hour for David Milton and $75.00 per hour for two paralegals.  Those rates are not justified and should be reduced substantially.

The prevailing awarded rates of attorneys with comparable experience are significantly lower than the rates sought by Plaintiff. Compare Cerqueira, 484 F. Supp. 2d at 250-51 (permitting lead counsel with "more than 25 years of litigation experience" who had "participat[ed] in at least two high-profile civil rights cases) to recover $325 per hour); Access 4 All, 2007 WL 118940 at *3 (permitting lead counsel with twenty-five years' experience to recover $275 per hour and counsel with fourteen years' experience to recover $225 per hour); Bogan, 432 F. Supp. 2d at 230 (awarding $300 per hour to lead attorney with more than 35 years' experience and $200 per hour for associate who was the lead attorney "in fact");

Dixon, 434 F.Supp.2d at 86 (permitting lead counsel with ten years' experience to recover $250 per hour and "second chair" attorney who has not spent the majority of career in employment field $175 per hour); McDonough v. City of Quincy, 353 F.Supp.2d 179, 187-88 (D. Mass. 2005) (permitting lead counsel with 15 years experience (11 focused on employment law) who had done 15 jury trials to collect $200 per hour and second attorney with 9 years' litigation experience to collect $150 per hour).

In contrast, Ms. Liss-Riordan, who seeks $350 per hour, has practiced for less than twelve years, during two of which she served as a law clerk to a federal judge in Houston, Texas. As she acknowledges in her affidavit, her "practice is now devoted primarily to wage and hour class actions." Affidavit of Shannon Liss-Riordan at ¶ 9. See also id. at p. 5 ¶ 9 [sic] ("In the last several years, my specialty has become wage and hour class actions.").

Ms. Pontikes, who seeks $275 per hour, had been practicing for approximately five years when she began representing Plaintiff in this case. Her affidavit does not note a single employment case in which she was involved before she began representing Plaintiff. Indeed, she filed the complaint, alleging violations of the federal FMLA and ADA statutes, in state court, which suggests that she was largely unfamiliar with practice involving those federal statutes (or even federal statutes in general). There appear to be no reported cases in which Ms. Pontikes is identified as having brief or argued substantial motions before she represented Plaintiff in this action.

The rates should be further reduced because the attorneys engaged in many hours of "non-core" activities. Plaintiff did not submit the "detailed contemporaneous time records" required for a fee petition, Grendel's Den, 749 F.2d at 952, electing instead to rely on eight pages of summary entries, several of which are obviously incomplete. As a result, it is impossible to

distinguish between "core" and "non-core" activities. In this circumstance, the Court is permitted to employ a discounted, "unified rate for all legal activities," Rolland v. Cellucci, 106 F. Supp. 2d 128, 143 (D. Mass. 2000), and the Court should discount the requested rates for that reason.

The summary provided by Plaintiff confirms that counsel spent substantial time on non-core activities. For example, Ms. Liss-Riordan spent more than *half* of the hours she billed on this matter in efforts to collect fees, which is ordinarily considered the sort of "non-core" work that compels a reduced rate. Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993). Moreover, this Court generally reduces the rate where the case did not proceed to trial. Rolland, 106 F. Supp. 2d at 143 (reduced rate reflects that "motion practice, discovery, mediation and other pre-trial activities may have been less demanding than trial efforts"); Access 4 All, 2007 WL 118940 at *3 (reducing rate where "practically all the effort expended by Plaintiffs' representatives involved non-court time). On these grounds, each of the requested rates should be reduced substantially.

Plaintiff should not be permitted to recover time spent by Mr. Milton at all. See p. 13, supra. "Plaintiffs bear the burden of providing affidavits that establish their attorneys' skills and experience." Bogan, 432 F.Supp.2d at 229. Compare Gay Officers Action League, 247 F.3d at 297 ("each of the four attorneys filed an affidavit attesting that she kept contemporaneous time records"). Plaintiff has failed to meet his burden and should not be permitted to recover fees alleged to have been billed by Mr. Milton.

Consequently, the Court should reduce substantially the hourly rate of each of Plaintiff's counsel, as well as any recoverable time billed by paralegals.

C.    The Court Should Reduce Any Award Due to Plaintiff's Limited Success

In the end, the result obtained is the "preeminent consideration" when considering whether the result of the lodestar should be further adjusted to ensure that only reasonable fees are awarded. The "result" is measured by several standards, including success on each claim, the relief actually achieved or the "societal importance of the right which has been vindicated." Coutin, 124 F.3d at 338. See also McDonough, 353 F.Supp.2d at 189 ("the results obtained are a significant factor to be considered in determining reasonable fees to be awarded"); Gay Officers Action League, 247 F.3d 288, 296 (1st Cir. 2001) ("degree of success is critical in determining the amount of a fee award").

By any of these standards, Plaintiff's recovery reflects extraordinarily limited "success." Plaintiff sought front pay, back pay, lost benefits, emotional distress damages, punitive damages and liquidated damages, in addition to attorneys' fees and costs, and asked for a job at the University and a letter of reference. But he accepted the Offer of Judgment for only $15,000— an insignificant sum relative to *any* of the categories of damages sought.

Had Plaintiff proceeded to trial and prevailed on any of the legal theories advanced, he would have been entitled to seek reasonable attorneys' fees and costs; each claim rested on a federal or state statute that permits recovery of fees. Consequently, his decision to accept $15,000 reflected either some concern that he was unlikely to recover *anything* at trial or, equally plausible, the recognition that he could take advantage of the error by the University's attorney. Under these circumstances, the fees and costs sought by Plaintiff should be reduced substantially. See Coutin, 124 F.3d at 339 ("If a prevailing party succeeds on all (or substantially all) of her claims, but receives no significant relief . . . , the trial judge sometimes may deny fees altogether because this scenario often highlights the plaintiff's failure to prove

actual compensable injury"). Accord, Mogilevsky, 311 F.Supp.2d at 221 (reducing lodestar amount where plaintiff achieved only "limited success"); Boston Children's First, 395 F.3d at 18 (no fees awarded to prevailing party).

In Cerqueira, the Court observed that "the trial judge has broad discretion" to determine the lodestar, and that:

> Discretion in such cases is guided by the purpose behind the fee-shifting statutes, which are designed to ensure effective access to the judicial process for persons with civil rights grievances, and are not to serve as full employment or continuing education programs for lawyers and paralegals.

484 F. Supp. 2d at 244 (internal citations omitted). Significantly, in Cerqueira, the plaintiff sought nearly $600,000 in attorneys' fees. Even though the plaintiff secured a favorable jury verdict in a racial profiling claim and was awarded punitive damages, the Court concluded that the award was "not remarkable and [does] not support a contention of 'extraordinary success,'" 484 F. Supp. 2d at 252, and reduced the plaintiff's fee petition by more than fifty percent. The Court also observed that:

> Factors that may influence an enhancement or departure from the lodestar determination include whether the "plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," whether the plaintiff achieved a level of success sufficient to justify a large award, and the "societal importance of the right which has been vindicated.

484 F. Supp. 2d at 245 (internal citations omitted). The framework set forth in Cerqueira neatly summarizes the guidelines that, properly applied in this case, should significantly reduce or eliminate an award of attorneys' fees.

Courts in this Circuit regularly reduce successful plaintiffs' petitions for fee awards. In Access 4 All, Inc., 2007 WL 118940, the parties entered into a settlement agreement in which the defendant, without admitting liability, agreed to make modifications relating to architectural barriers and facility access for disabled individuals. In other words, plaintiffs secured a result that had "societal importance." Nonetheless, the Court awarded plaintiffs less than seventy percent of the fees requested. In Bogan, supra, plaintiffs sought a total of nearly $127,000 in attorneys' fees and costs. This Court's reduction of that award to less than $17,000 was upheld by the First Circuit. 489 F.3d 417. The standards applied in this jurisdiction compel a dramatic reduction—if any fees are to be awarded at all.

## CONCLUSION

Plaintiff's counsel seeks to leverage a drafting error by defense counsel that nets $15,000 for her client into more than $130,000 for her firm. That is not a desirable result, and it is not permitted under the law of this Circuit. Plaintiff's meager winnings are not sufficient to make him a prevailing party under any of the relevant statutes. Even if it were, however, this Court should substantially reduce the hours and the hourly rate of Plaintiff's counsel, and should adjust the result of that calculation downward to account for Plaintiff's truly "limited success."

WHEREFORE, Defendants respectively request that this Court deny Plaintiff's Motion for Attorneys' Fees and Costs or, in the alternative, exercise its discretion to substantially reduce the fees awarded.

## ORAL ARGUMENT

Defendant requests oral argument on Plaintiff's motion.

                    Respectfully submitted,

                    TRUSTEES OF BOSTON UNIVERSITY,
                    By its attorney,


                    s/Lawrence S. Elswit
                    Lawrence S. Elswit, BBO # 153900
                    Crystal D. Talley, BBO # 633759
                    Boston University
                    Office of the General Counsel
                    125 Bay State Road
                    Boston, Massachusetts  02215
Date:  February 1, 2008        (617) 353-2326