UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN WALSH, ) | ) | |
| Plaintiff | ) | |
|  | ) | |
| v. | ) | Civil Action No. 04-CV-11240-RCL |
|  | ) | |
| BOSTON UNIVERSITY | ) | |
| Defendant. | ) | |
|  | ) | |

PLAINTIFF'S REPLY IN SUPPORT OF
HIS MOTION FOR ATTORNEYS' FEES AND COSTS

After three years of hard-fought litigation, Plaintiff accepted BU's Offer of Judgment, in reliance on well-established case law that accepting the offer would make him a prevailing party and thus entitle him to recover his accrued attorneys' fees, in addition to the amount specified in the offer of judgment. As explained in Plaintiff's earlier briefing, this total amount was almost precisely mid-way between the parties' last settlement offers. See Plaintiffs' Opposition to Defendant's Motion for Relief from Judgment (Docket # 39), at 5. BU, however, claiming that it had made a "mistake" and did not realize that it would be liable for Plaintiff's attorneys' fees by virtue of the offer of judgment[1], is attempting to substantially whittle down the amount of Plaintiff's fees—

---

[1] As also explained in Plaintiff's earlier briefing (see Docket #39, at 5-6), there would have been no logical reason for BU to make an offer of judgment for $15,000 including attorneys' fees because it would provide BU with none of the protection that an offer of judgment provides defendants that utilize this tool. Because Plaintiff's accrued fees by that point were clearly far beyond $15,000, there was no risk whatsoever to Plaintiff that he may prevail at trial but recover less than $15,000 including attorneys' fees. His risk under Rule 68 was that he prevailed at trial but recovered less than $15,000 in damages, in which case he would then not be permitted to recover fees for work performed after rejecting the offer of judgment (or alternatively that he not prevail at all and thereby forego obtaining judgment). Weighing this risk, and recognizing that the offer of judgment (under well-established case law) would allow him to recover the amount of the stated judgment plus his accrued fees (an amount right between the parties' last settlement offers), he opted not to take that risk and instead take the judgment. Thus the purpose of Rule 68 was achieved: to render a trial unnecessary when the defendant agrees to allow judgment to be entered against it, and the plaintiff is satisfied with obtaining the judgment and the amount he will receive (which includes reimbursement for accrued fees, when they are not included in the offer of judgment).

an amount which BU originally did not dispute was a reasonable sum for the litigation that had transpired.  See BU's original opposition to Plaintiff's fee petition, Docket # 38.

BU has argued that the degree of Plaintiff's success should be considered in the Court's determination of what would constitute a reasonable fee.  As cited by Plaintiff earlier, courts are loathe to reduce fees based upon the amount of damages recovered and, based upon the express requirements of and purpose behind the civil rights laws, have awarded substantial fees even for "nominal" monetary victories.  Here (putting aside for the moment the amount of the judgment and Plaintiff's calculations referenced above in note 1 regarding the risk he faced going to trial with BU's offer of judgment having been made), <u>Plaintiff achieved a victory that he had sought for more than three years: a judicial acknowledgment that he is the prevailing party in his discrimination and FMLA claims against BU.</u>

Under Rule 68, it does not matter whether such acknowledgment comes as a result of a trial verdict or a concession by the defendant to have judgment entered against it.  Here, the defendant conceded to have judgment entered against it, and under the law, Plaintiff is the prevailing party entitled to recover the fees that needed to be incurred to get him to that point.  As BU recognizes, <u>Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 605 (2001), held that fees are not awardable for settlements absent judicial imprimatur (e.g. by way of a court-ordered consent decree).  Here, by virtue of Plaintiff having obtained judgment by way of Rule 68, Plaintiff has attained that judicial imprimatur, or "'court-ordered' change in the legal relationship of the parties". <u>Doe v. Boston Public Schools</u>, 358 F.3d 20, 24 (1st Cir. 2004).

By consenting to have judgment entered against it, BU saved itself from the risk of having a much larger judgment entered against it, as well as liability for additional accrued attorney's fees. Clearly, it took substantial effort on the part of Plaintiff's attorneys to bring BU to the point at which it recognized this risk and would consent to have judgment against it. Under the law (because there has been judicial imprimatur of that consent--a "court-ordered" change in the parties' relationship), Plaintiff is entitled to recover the reasonable fees incurred in order to get BU to that point.

If the Court were now to reduce those fees (which are in an amount that BU's counsel previously raised no objection to with respect to the number of hours spent and rates requested for counsel), it would entirely undermine Plaintiff's reasonable expectation of what he had obtained by accepting the offer of judgment.[2] It would also undermine the entire point of Rule 68, in making a judgment obtained by consent something different and less meaningful than a judgment obtained following a verdict. When a defendant is ready to have judgment entered against it by way of consent, the courts should not undermine the rule's purpose by encouraging plaintiffs to go forward nevertheless with unnecessary trials (which would create a needless burden on the courts, which Rule 68 was designed to alleviate).

With this introduction, Plaintiff now responds here to BU's new, particular arguments as to why the fees requested are too high.

First of all, the rates requested for Plaintiff's counsel are eminently reasonable, as BU's counsel previously acknowledged. Although BU has changed its position to now

---

[2] Through its filings, BU appears to assume, erroneously, that Plaintiff had a contingency fee agreement with his counsel, and thus that the attorneys' fees at issue matter only to counsel. In fact, Plaintiff has paid substantially out of pocket for his counsel's representation of him, and thus his expectation of reimbursement was critical to his acceptance of the offer of judgment.

3

state that Plaintiff's counsel's proposed billing rates are "excessive," (BU's Opposition, at 11), in its original opposition to fee petition, BU stated unequivocally: "To be clear, the University does not take issue with the hourly rate requested by counsel." (See Docket # 38, at 12).

BU's challenge to the billing rates relies on a handful of cases, primarily issued by Judge Young. One of these cases acknowledges that the prevailing rate for "lead civil rights attorneys in the Boston area ranges between $200 and $350 per hour".[3] Opposition, at 14 (citing Cerqueira v. American Airlines, Inc., 484 F.Supp.2d 241, 250 (D.Mass. 2007)). Moreover, the Bilbilian fee award, which contains a detailed analysis of a fee petition and surveyed many fee award cases, noted that "The decisions of Judge Young on attorney fee awards are decidedly out-of-step with numerous other awards by federal and state court judges, and do not reflect that actual fees charged by major plaintiff counsel, and certainly not be defense counsel." Exhibit F to Doc. # 33, at 14-15.

As Plaintiff's lead counsel, Shannon Liss-Riordan, noted in her affidavit in support of the fee petition (see Exhibit C to Plaintiff's original Motion for Attorneys' Fees, Docket # 33, ¶ 10), she now specializes in class action litigation, which is frequently far more remunerative than the hourly rate requested for her in the pending motion. As a result of her class action settlements for which she obtains fees as a percentage of the total recovery, rather than an hourly rate, her effective hourly rate for this work is far beyond the $350 per hour requested here. In fact, in recent years, her

---

[3] As noted in the original petition and supporting affidavits, Attorney Liss-Riordan, despite having graduated from law school only 12 years ago, is one of the leading civil rights attorneys in Boston. She has been invited to speak at the March 27, 2008, Federal Court Judicial Forum, along with other prominent Boston attorneys. In addition, her work is gaining national recognition as her practice has become more involved in nationwide cutting-edge class action litigation.

effective rate has been generally in the range of $400 - $1,000 per hour for settled cases. See id. Thus, the rate of $350 per hour (for which she was approved in 2006 by a prominent arbitrator in an individual wrongful termination case, for which she recovered fees based upon a lodestar analysis[4]) is actually below her market rate.[5]

In challenging Attorney Pontikes' rate, BU makes a dig at her by noting that this case was filed originally in state court, which BU suggests indicates a lack of her familiarity with federal statutes. BU's questioning of her abilities and deserved fee rate based on this one tactical decision is absurd[6] (especially considering that BU's counsel contends that it was his own unfamiliarity with the workings of Rule 68 that caught him by surprise in this case). As cited in her affidavit (Exhibit D to Plaintiff's original fee petition, Docket # 33), Attorney Pontikes has more than 10 years experience in primarily employment litigation and has been recognized as a Super Lawyer by Boston Magazine. Her experience in this field and level of involvement in this case as a senior associate well justifies her requested rate. See also supporting affidavit of Robert S. Mantell (Exhibit M to Docket #33).[7]

---

[4] See Bilbilian v. Morton's of Chicago/Boston, Inc., AAA No. 11-160-00217-03 (Sept. 28, 2006) (Exhibit F to Plaintiff's original Motion for Attorneys' Fee, Docket # 33), at 15.

[5] As Plaintiff noted in earlier briefing, the purpose of fee-shifting provisions in civil rights statutes is to encourage attorneys to take on such cases, although financially their efforts may be better rewarded by other types of work. Courts have thus recognized the important public rights supported by fee-shifting statutes. See, e.g., Commonwealth v. Dowd, 37 Mass. App. Ct. at 168-69 ("[f]ee awards are the means to send the private attorneys general into the field" so that individuals may be free of unlawful discrimination); Stratos v. Department of Public Welfare, 387 Mass. 312, 323 (1982) (fee-shifting statute encourages "suits that are not likely to pay for themselves, but nonetheless are desirable because they vindicate important rights"). See also Furtado v. Bishop, 635 F.2d 915 (1st Cir. 1980).

[6] It is not uncommon for Plaintiffs to file complaints including federal claims in state court, since they may remain there if defendants choose not to remove them.

[7] BU also challenges the requested fees for David Milton, an associate attorney who worked on the successful opposition to BU's motion for relief from entry of judgment (which was not duplicative of earlier work performed by Attorney Pontikes, since it was a new issue in the case). Since Attorney Milton (who performed a relatively quite small amount of work in this case) is no longer with this firm, Plaintiff

5

As for BU's arguments regarding the amount of hours expended, primarily by Attorney Pontikes, Plaintiff has the following observations.[8]  First, as stated earlier, BU's counsel did not contest the amount of hours spent on this litigation in its initial opposition to Plaintiff's attorneys' fees petition (Docket # 38).  Indeed, it pointedly appeared not to contest the calculation of the fees, only the question of whether fees were awardable at all, or whether they should be reduced by virtue of the size of the judgment or the means by which victory was obtained.  Second, BU has not offered by way of comparison the amount of time that *its* counsel spent on this case; such a comparison could have provided the court with some indication as to whether or not this amount of time was in fact excessive.  In the absence of even a claim that BU was able to defend itself in far fewer hours than Plaintiff's counsel expended, the court may infer that BU's counsel spent just as many hours – which in turn would help explain why Plaintiff's counsel spent so many hours.  Defendants' counsel should not be permitted to make bald assertions that Plaintiffs' counsel spent inordinate time litigating a case without some showing that its time on the case was substantially less than Plaintiff's counsel's time.  See Bilbilian v. Morton's of Chicago/Boston, Inc., (Exhibit F to Plaintiff's original Motion for Attorneys' Fee, Docket # 33), at 8 (citing Mulhearn v. Roach, 20 Mass.App.Ct. 322, 330 (1985); Change the Climate v. MBTA, 2005 WL 3735100 (D. Mass. 2005)).  Absent such a

---

has simply provided a brief explanation as to his qualifications, from which the Court may assess the reasonableness of the requested rate.  This practice has been condoned by courts in other fee petitions, for example the Sprague v. United Airlines case, 2002 WL 1803733 (noted in ¶ 11of Attorney Liss-Riordan's affidavit, Exhibit C to Docket # 33).

[8]     In challenging the number of hours spent, BU erroneously cites Wennik v. Polygram Group Distribution, Inc., 304 F.3d 123 (1st Cir. 2002), as having reversed a fee award to Ms. Liss-Riordan.  Attorney Liss-Riordan's firm handled the appeal of that matter and the appeal and remand of the attorney fee award; her firm was not the trial counsel whose fee award was reversed.  A substantial fee award (not greatly reduced from the original award) was entered following remand to the district court in that case.

showing, the Court has little ability to make an independent judgment about such a claim. See Bilbilian, at 8 ("When one reads some decisions reviewing fee petitions, one is struck by the seemingly arbitrary judgments made by judges regarding the billed time. Without any generally recognized guidelines for how long it should take to investigate a claim, conduct discovery, or write a brief, or criteria related to the specific case, some judges reach random conclusions.")[9]

Thus, Plaintiff will not take this Court's time to defend line-by-line the entries noted in the billing records; the overall amount of time expended is not unreasonable for an aggressively litigated case that came to the brink of trial.[10] Given that the Court

---

[9] And even if Defendant were to make such a showing, the Court should take into consideration the fact that prosecuting claims—which entails determining and shaping legal theories and investigating, through both discovery and informal methods, the facts that would support such theories—may reasonably be more time-consuming than defending against claims.

[10] Plaintiff will respond below however to several arguments raised by BU:

First, BU questions the use of paralegals to review documents and create spreadsheets (Opposition, at 11). As the District Court would recall, these spreadsheets were highly pertinent to Plaintiff's successful defeat of BU's motion for summary judgment – and also were necessary trial preparation. This case entailed a heated factual dispute regarding the reasons for Plaintiff's absences from work, and so a thorough and painstaking analysis of his time records was necessary. Plaintiff's counsel economically assigned this task to much lower-billing paralegals.

BU objects to block-billing and several time entries for which some of the information was inadvertently missing from the chart (Opposition, at 11). These entries contain enough information from which the Court may make draw reasonable inferences as to the work performed, and there is no flat prohibition on "block-billing." The issue is simply whether the time spent was reasonable. See Bilbilian, Exhibit F to Docket # 33, at 10 ("Nowhere is it stated that counsel must separately identify every discrete task and attach the precise time spent. To mandate that level of recordkeeping would waste enormous amounts of time, since lawyers would be constantly interrupting their work time to make bookkeeping entries").

BU objects to Attorney Liss-Riordan billing to prepare with Attorney Pontikes and attend the summary judgment hearing (Opposition, at 12-13). Given that Attorney Liss-Riordan did not bill for much of the time she spent supervising Attorney Pontikes (see infra n. 12), and given the particular importance of the summary judgment hearing, this minimal overlap of work does not justify reducing hours.

Finally, BU makes brief reference to "core" v. "non-core" work (Opposition, at 15-16). This method of allocating attorneys' hours in fee petitions is not mandated and indeed has been rejected as "unrealistic and potentially inaccurate". See Change the Climate v. MBTA, 2005 WL 3735100, *3 ("The duty of a court in Boston in determining a reasonable fee is to 'find the prevailing hourly

limited this reply brief to 8 pages, it appears that Judge Lindsay did not desire such a detailed response.

Instead, Plaintiff will rest on the observations noted above, and—in the spirit of compromise—and in order to alleviate the daunting burden to the Court of assessing the reasonableness of those time records line-by-line, Plaintiff proposes a modest, across-the-board reduction of Attorney Pontikes' hours by 15%.[11]

Thus, the requested fee would be reduced by $15,000 for Attorney Pontikes (from the approximately $100,000 that was requested for her). The total fee request is therefore $101,270 (the remaining amount from the original petition) + $4,209.53 for expenses + $14,525 for the supplemental fees requested following the initial fee petition, for a total of $120,000.

Plaintiff requests that the Court enter an award for these requested fees and costs without further delay, so that this case which Plaintiff believed to have been concluded a year ago may at last be closed. Plaintiff was the prevailing party in this matter, the success he achieved was significant to him (a court-approved acknowledgment that he was the prevailing party), and he is thus entitled to recover in full his reasonable attorneys' fees. The fees he has requested are reasonable.

---

rate in Boston for attorneys of comparable skill, experience, and reputation as' [plaintiffs' counsel]. . . . In order to do this, I find it helpful to look to the usual billing practices of law firms in the area. Firms simply do not divide their work into core and non-core hours.")

[11] Plaintiff makes this concession, even though, as noted in his earlier petition, Attorney Liss-Riordan's time reflected in her billing records was understated because she frequently did not bill for discussions between her and Attorney Pontikes. Thus the hours already contained in the records are less than the actual number of hours spent.

                                        Respectfully submitted,

                                        JOHN WALSH,
                                        By his attorney,

                                        _/s/ Shannon Liss-Riordan_____
                                        Shannon Liss-Riordan, BBO #640716
                                        Pyle, Rome, Lichten, Ehrenberg
                                            & Liss-Riordan, P.C.
                                        18 Tremont St., Ste. 500
                                        Boston, MA 02108
March 14, 2008                      (617) 367-7200

## CERTIFICATE OF SERVICE

      This is to certify that on March 14, 2008, a copy of the above document was served upon all counsel of record by electronic filing.

                                        _/s/ Shannon Liss-Riordan_____
                                        Shannon Liss-Riordan, Esq.